CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

APR 06 2017

JULIA C. DUDLEY, CLERK
BY: /s/
    DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| SMART WEARABLE TECHNOLOGIES INC., | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) ) |
| FITBIT, INC., | ) ) |
| Defendant. | ) ) |

Civil Action No. 3:16CV00077

**MEMORANDUM OPINION**

By: Hon. Glen E. Conrad
Chief United States District Judge

Smart Wearable Technologies Inc. ("Smart Wearable") filed this action against Fitbit, Inc. ("Fitbit") for alleged infringement of U.S. Patent No. 6,997,882 B1 ("the '882 Patent"). Smart Wearable asserts claims of direct and indirect infringement. Fitbit has moved to dismiss the claims of indirect infringement under Rule 12(b)(6) of the Federal Rules of Civil Procedure. The court held a hearing on the motion on March 22, 2017. For the reasons set forth below, the motion to dismiss will be granted in part and denied in part.

### Background

Smart Wearable is a Delaware corporation based in Virginia. It is the owner of the '882 Patent, titled "6-DOF Subject Monitoring Device and Method," which was issued by the United States Patent and Trademark Office on February 14, 2006. The patent "relates to systems and methods of monitoring a subject using acquired six degree-of-freedom ("6-DOF") data regarding the subject as well as acquired physiological data of the subject." Compl. ¶ 6, Docket No. 1. "Specifically, certain claims of the '882 Patent disclose the use of an acceleration module to obtain 6-DOF data descriptive of the movement of a subject." Id. "The 6-DOF data is synchronized with obtained physiological data, such as the sensed, detected, or measured heart

rate of the subject," and "[t]he synchronized 6-DOF and physiological data is then displayed." Id.

Fitbit is a Delaware corporation based in California. Smart Wearable claims that Fitbit has infringed the '882 Patent by making and selling certain fitness tracker products (referred to collectively as "the Accused Products"), which "monitor a subject using acquired 6-DOF data regarding the subject as well as acquired physiological data of the subject." Id. at ¶ 12. In particular, Smart Wearable alleges that "the Accused Products in the past directly infringed and continue to directly infringe at least claim 8 of the '882 Patent." Id. at ¶ 13.

In addition to alleging direct infringement by Fitbit, Smart Wearable claims that Fitbit has engaged in indirect infringement, both by inducing customers and/or end users to infringe the '882 Patent, and by contributing to the infringement of the patent by customers and/or end users. To support the claims of indirect infringement, Smart Wearable alleges that "Fitbit has had knowledge of, or was willfully blind to, the existence of the '882 Patent since the filing of this Complaint, if not earlier." Id. at ¶ 9. Smart Wearable alleges that end users of the Accused Products directly infringe claim 8 "when using the products to, at least, monitor their heart rate, active minutes, calories burned, heart rate zone training, and/or sleep tracking." Id. at ¶ 14. Smart Wearable asserts that Fitbit possessed a specific intent to induce such infringement by, at a minimum, providing user guides, sales-related materials, and product instruction materials that "instruct its customers and end users on the normal operation of at least the Accused Products including heart rate, active minutes, calories burned, heart rate zone training, and/or sleep tracking features that infringe the '882 Patent." Id. at ¶ 15. Smart Wearable further asserts, upon information and belief, that "the heart rate, active minutes, calories burned, heart rate zone training, and/or sleep tracking features of the Accused Products have no substantial non-

infringing uses, and Fitbit knows that these features are especially made or especially adapted for use in a product that infringes the '882 Patent." Id. at ¶ 17.

## Standard of Review

Fitbit has moved to dismiss the claims of indirect infringement pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. "The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint." Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999). Accordingly, the court's "evaluation is thus generally limited to a review of the allegations of the complaint itself." Goines v. Valley Cmty. Servs. Bd., 822 F.3d 159, 165-66 (4th Cir. 2016). "While a complaint attacked by a Rule 12(b)(6) motion does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of [its] entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citation and internal quotation marks omitted). To survive dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face,'" meaning that it must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570).

## Discussion

The Patent Act provides that "whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor, infringes the patent." 35 U.S.C. § 271(a). The statute also prohibits a person from indirectly infringing a patent. See 35 U.S.C. § 271(b)-(c). The two types of indirect infringement are induced infringement under § 271(b) and contributory infringement under § 271(c).

3

## I. <u>Induced Infringement</u>

Section 271(b) provides that "[w]hoever actively induces infringement of a patent shall be liable as an infringer." 35 U.S.C. § 271(b). "Inducement requires a showing that the alleged inducer knew of the patent, knowingly induced the infringing acts, and possessed a specific intent to encourage another's infringement of the patent." <u>Vita-Mix Corp. v. Basic Holding, Inc.</u>, 581 F.3d 1317, 1328 (Fed. Cir. 2009). Additionally, a plaintiff must plead facts showing direct infringement by someone other than the defendant. <u>Nielson Co. (US), LLC v. comScore, Inc.</u>, 819 F. Supp. 2d 589, 593 (E.D. Va. 2011).

In moving to dismiss the claim of induced infringement, Fitbit contends that the plaintiff has not adequately alleged (1) that Fitbit had knowledge of the '882 Patent, or (2) that it specifically intended to encourage others to infringe the patent. The court will address each argument in turn.

### A. <u>Knowledge of the '882 Patent</u>

The original complaint contains one allegation relevant to the issue of knowledge. In paragraph 9, Smart Wearable alleges that "Fitbit has had knowledge of, or was willfully blind to, the existence of the '882 Patent since the filing of this Complaint, if not earlier." Compl. ¶ 9.

To the extent the complaint can be read to assert a claim for induced infringement based on pre-suit knowledge of the '882 Patent, the court agrees with Fitbit that the foregoing allegation does not pass muster under <u>Twombly</u> and <u>Iqbal</u>. In short, Smart Wearable has not pled any facts which plausibly suggest that Fitbit had knowledge of, or was willfully blind to, the existence of the patent prior to the filing of this lawsuit. Accordingly, any claim for induced infringement based on pre-suit knowledge will be dismissed without prejudice.[1]

---

[1] The plaintiff has requested leave to amend the complaint in the event that the court concludes that any of its claims are inadequately pled. The court will grant the plaintiff's request.

4

Nevertheless, Smart Wearable also alleges that Fitbit has known about the '882 Patent since the instant action was filed, and that the infringement remains ongoing. In other words, to the extent Smart Wearable seeks to recover for induced infringement occurring after it filed suit, Smart Wearable relies on the filing of the complaint to satisfy the knowledge requirement. See Rembrandt Social Media, LP v. Facebook, Inc., 950 F. Supp. 2d 876, 882 (E.D. Va. 2013) (holding that knowledge of the patent and its claims can be established by the filing and service of an infringement suit).

"This approach, although rejected by some district courts, is in keeping with the decisions of most courts that have considered the issue recently." Script Sec. Solutions, LLC v. Amazon.com, Inc., 170 F. Supp. 3d 928, 937 (E.D. Tex. 2016) (collecting cases); see also Rembrandt, 950 F. Supp. 2d at 881-82 (observing that "a majority of district courts considering this issue have held that post-suit knowledge (i.e., knowledge provided by the filing of the lawsuit) satisfies the knowledge element for indirect infringement," and concluding that "the majority view is the sounder view"); Regents of the Univ. of Minn. v. AT&T Mobility LLC, 135 F. Supp. 3d 1000, 1011-12 (D. Minn. 2015) (surveying decisions from other districts and concluding that "the notice pleading requirement for indirect infringement claims is satisfied by the filing of a complaint"). In the absence of any decision by the United States Court of Appeals for the Federal Circuit addressing this issue, the court is persuaded by the reasoning adopted by the majority of district courts that have ruled that a complaint provides sufficient notice of the existence of a patent to support a claim for indirect infringement occurring after the filing date. Accordingly, to the extent that Smart Wearable seeks to recover for acts of induced infringement

that occurred after the commencement of this action, the court concludes that the filing of the complaint satisfies the knowledge requirement.[2]

### B. Specific Intent

Fitbit also seeks dismissal of the claim for induced infringement on the basis that Smart Wearable failed to adequately plead that Fitbit possessed the specific intent to encourage infringement. See Ericsson, Inc. v. D-Link Sys., Inc., 773 F.3d 1201, 1219 (Fed. Cir. 2014) ("Inducement requires that the alleged infringer 'knowingly induced infringement and possessed specific intent to encourage another's infringement.'") (quoting DSU Med. Corp. v. JMS Co., 471 F.3d 1293, 1306 (Fed. Cir. 2006)).

The Federal Circuit has recognized that the requisite intent to induce infringement may be established through circumstantial evidence. Vita-Mix, 581 F.3d at 1328. For instance, "[i]nducement can be found where there is '[e]vidence of active steps . . . taken to encourage direct infringement, such as advertising an infringing use or instructing how to engage in an infringing use.'" Takeda Pharms. U.S.A., Inc. v. West-Ward Pharm. Corp., 785 F.3d 625, 631 (Fed Cir. 2015) (quoting Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd., 545 U.S. 913, 936 (2005)). With respect to product instructions, "[t]he question is not . . . whether a user following the instructions may end up using the device in an infringing way," but "whether [the] instructions teach an infringing use of the device such that [the court is] willing to infer from those instructions an affirmative intent to infringe the patent." Vita-Mix, 581 F.3d at 1329 n.2; see also Takeda, 785 F.3d at 631 ("Merely describing . . . an infringing mode is not the same as recommend[ing], encourag[ing], or promot[ing] . . . an infringing use, or suggesting that an infringing use should be performed.") (citations and internal quotation marks omitted).

---

[2] The court notes that the "consequence" of relying on the filing of an infringement suit to satisfy the knowledge requirement is that the plaintiff "may only recover damages for indirect infringement for the period of time that commences once the putative infringer learns of the patent." Rembrandt, 950 F. Supp. 2d at 882.

In this case, Smart Wearable alleges that end users of the Accused Products "directly infringe at least claim 8 of the '882 Patent when using the Accused Products to . . . monitor their heart rate, active minutes, calories burned, heart rate zone training, and/or sleep tracking." Compl. ¶ 14. Smart Wearable further alleges that Fitbit actively induces such infringement "by way of advertising, solicitation, and provision of product instruction materials." Id. at ¶ 15. According to the complaint, the materials provided by Fitbit do not merely describe an infringing mode. Instead, they "instruct [Fitbit's] customers and end users" on how to "operat[e]" the "heart rate, active minutes, calories burned, heart rate zone training, and/or sleep features that infringe the '882 Patent." Id.

Assuming the truth of Smart Wearable's factual allegations, the court can reasonably infer that Fitbit has taken active steps to encourage customers to use the Accused Products in an infringing manner, and therefore acted with the requisite intent. See, e.g., Intellicheck Mobilisa, Inc. v. Wizz Sys., LLC, No. C15-0366JLR, 2016 U.S. Dist. LEXIS 7290, at *14-15 (W.D. Wash. Jan. 20, 2016) ("Intellicheck further alleges that . . . IDScan continued to make the accused products, sell those products to its customers, and provide instructions along with its products that explained how to use the products to practice the claimed invention. The court can reasonably infer from these allegations that IDScan intended for its customers to infringe and took affirmative steps to induce such infringement."); M2M Solutions LLC v. Telit Communs. PLC, No. 14-1103-RGA, 2015 U.S. Dist. LEXIS 102349, at *12 (D. Del. Aug. 5, 2015) ("In short, Plaintiff alleges that Defendants provided instructions to their customers on use of those products in a manner that would directly infringe the patent. This allegation is sufficient to plead Defendants' specific intent."). Accordingly, Smart Wearable has stated a plausible claim for post-filing induced infringement. Fitbit's motion to dismiss will be denied with respect to this claim.

7

## II. Contributory Infringement

Fitbit has also moved to dismiss the claim for contributory infringement. "Contributory infringement occurs if a party sells or offers to sell, a material or apparatus for use in practicing a patented process, and that 'material or apparatus' is material to practicing the invention, has no substantial non-infringing uses, and is known by the party 'to be especially made or especially adapted for use in an infringement of such patent.'" In re Bill of Lading Transmission & Processing Sys. Patent Litig., 681 F.3d 1323, 1337 (Fed Cir. 2012) (quoting 28 U.S.C. § 271(c)). "To state a claim for contributory infringement, . . . a plaintiff must, among other things, plead facts that allow an inference that the components sold or offered for sale have no substantial non-infringing uses." Id. (citations omitted). As is true for induced infringement, contributory infringement also "requires knowledge of the patent in suit and knowledge of patent infringement." Commil USA, LLC v. Cisco Sys., Inc., 135 S. Ct. 1920, 1926 (2015).

Here, in addition to challenging the sufficiency of the allegations regarding its knowledge of the '882 Patent, Fitbit argues that Smart Wearable has failed to adequately plead that the Accused Devices, or any infringing components thereof, lack substantial non-infringing uses. Upon review of the complaint, the court agrees. In paragraph 17, Smart Wearable alleges, upon information and belief, that "the heart rate, active minutes, calories burned, heart rate zone training, and/or sleep tracking features of the Accused Products have no substantial non-infringing uses." Compl. ¶ 17. However, Smart Wearable provides no facts to support this assertion. In the absence of further factual enhancement, such a conclusory allegation is insufficient to state a claim for contributory infringement. See In re Bill of Lading, 681 F.3d at 1337; see also Windy City Innovations, LLC v. Microsoft Corp., 193 F. Supp. 3d 1109, 1116 (N.D. Cal. 2016) (dismissing a claim for contributory infringement based on the "bare conclusion" that the components at issue were not suitable for substantial non-infringing use);

8

Koninklijke Philips N.V. v. ASUSTeK Computer Inc., No. 15-1125-GMS, 2016 U.S. Dist. LEXIS 147169, at *16 (D. Del. Oct. 25, 2016) (dismissing a claim for contributory infringement because the plaintiff provided "no facts supporting the inference that the Accused Functionalities have no substantial non-infringing use"). Accordingly, Fitbit's motion to dismiss will be granted with respect to this claim.[3]

## Conclusion

For the reasons stated, Fitbit's motion to dismiss will be granted in part and denied in part. The claim for induced infringement based on pre-suit knowledge of the '882 Patent will be dismissed without prejudice, as will the claim for contributory infringement. Smart Wearable will be granted leave to file an amended complaint.

The Clerk is directed to send copies of this memorandum opinion and the accompanying order to all counsel of record.

DATED: This 6th day of April, 2017.

_____
Chief United States District Judge

---

[3] In its response to the pending motion, the plaintiff appears to retreat from the allegations in the complaint and assert a new theory of contributory infringement. "[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." Mylan Labs., Inc. v. Akzo, N.V., 770 F. Supp. 1053, 1068 (D. Md. 1991) (quoting Car Carriers, Inc. v. Ford Motor Co., 745 F.2d 1101, 1107 (7th Cir. 1984)); see also Bratcher v. Pharm. Prod. Dev., Inc., 545 F. Supp. 2d 533, 542 (E.D.N.C. 2008) (noting that a plaintiff "cannot use her brief to amend her complaint"). Therefore, the court will not consider the new theory in ruling on the pending motion. However, the court will permit the plaintiff to file an amended complaint.