1  DURIE TANGRI LLP
   CLEMENT S. ROBERTS (SBN 209203)
2  croberts@durietangri.com
   EUGENE NOVIKOV (SBN 257849)
3  enovikov@durietangri.com
   TIMOTHY C. SAULSBURY (SBN 281434)
4  tsaulsbury@durietangri.com
   JAMES S. TSUEI (SBN 285530)
5  jtsuei@durietangri.com
   217 Leidesdorff Street
6  San Francisco, CA  94111
   Telephone:    415-362-6666
7  Facsimile:    415-236-6300

8  Attorneys for Defendant
   FITBIT, INC.

9

10            IN THE UNITED STATES DISTRICT COURT

11          FOR THE NORTHERN DISTRICT OF CALIFORNIA

12                 SAN FRANCISCO DIVISION

13  SMART WEARABLE TECHNOLOGIES, INC.,          Case No. 3:17-cv-05068-VC

14                        Plaintiff,            **DEFENDANT FITBIT, INC.'S RENEWED
                                                NOTICE OF MOTION AND MOTION FOR**
15        v.                                    **SANCTIONS, AND MEMORANDUM OF
                                                POINTS AND AUTHORITIES IN SUPPORT**
16  FITBIT, INC.,                               **THEREOF**

17                        Defendant.            Date:    May 10, 2018
                                                Time:    10:00 a.m.
18                                              Ctrm:    4, 17th Floor
                                                Judge:   Honorable Vince Chhabria
19

20

21

22

23

24

25

26

27

28

1

## NOTICE OF MOTION AND MOTION

2      Defendant Fitbit, Inc. ("Fitbit") hereby moves pursuant to Federal Rule of Civil Procedure 11 for

3 the Court to issue sanctions against Plaintiff Smart Wearable Technologies, Inc. ("SWT").  The motion

4 should be granted because SWT's infringement allegations are objectively frivolous, because it failed to

5 conduct an adequate pre-filing investigation, and for the additional reasons detailed below.

6      This motion is based on the concurrently filed Memorandum of Points and Authorities in support,

7 the Declarations of Joe Paradiso and Clement S. Roberts filed herewith, along with their attached

8 exhibits, the pleadings of record, and any other evidence the Court deems proper and just.

9      Pursuant to Fed. R. Civ. P. 11(c)(2), this Motion (less this sentence), the accompanying

10 Memorandum of Points and Authorities (less minor, non-substantive corrections), and supporting

11 declarations and exhibits were served on counsel of record for Plaintiffs via email and FedEx on

12 November 22.  Declaration of Clement S. Roberts in Support of Motion for Sanctions ("Roberts Decl.")

13 Ex. V.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

i

DEFENDANT'S RENEWED NOTICE OF MOTION AND MOTION FOR SANCTIONS; MEMORANDUM
OF POINTS AND AUTHORITIES IN SUPPORT THEREOF / CASE NO. 3:17-CV-05068-VC

## TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ...................................................................................................1

II.  BACKGROUND .....................................................................................................1

    A.  The Procedural History ...............................................................................1

    B.  The '882 Patent ...........................................................................................2

III.  ARGUMENT ..........................................................................................................4

    A.  Rule 11 Standards .......................................................................................4

    B.  SWT's Infringement Allegations are Objectively Baseless..........................6

    C.  SWT's Prefiling Investigations Were Inadequate.......................................10

        1.  The Pre-May 26, 2017 Filings .......................................................10

        2.  The Post-May 26, 2017 Filings......................................................14

    D.  SWT's Conduct Violated the "Improper Purpose" Prong of Rule 11. .............19

    E.  The Court Should Award Material Sanctions ..................................................19

IV.  CONCLUSION.......................................................................................................21

DEFENDANT'S RENEWED NOTICE OF MOTION AND MOTION FOR SANCTIONS; MEMORANDUM
OF POINTS AND AUTHORITIES IN SUPPORT THEREOF / CASE NO. 3:17-CV-05068-VC

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*Antonious v. Spalding & Evenflo Cos.*,
    275 F.3d 1066 (Fed. Cir. 2002)......................................................................................5, 14

6 *Battles v. City of Ft. Myers*,
    127 F.3d 1298 (11th Cir. 1997) ...........................................................................................15

7

8 *Christian v. Mattel, Inc.*,
    286 F.3d 1118 (9th Cir. 2002) ...............................................................................................5

9 *Clinton v. Jones*,
    520 U.S. 681 (1997)..............................................................................................................19

10

11 *In re Grantham Bros.*,
    922 F.2d 1438 (9th Cir. 1991) ...............................................................................................5

12

13 *Intamin Ltd. v. Magnetar Techs., Corp.*,
    483 F.3d 1328 (Fed. Cir. 2007)............................................................................................11

14 *Judin v. United States*,
    110 F.3d 780 (Fed. Cir. 1997)..............................................................................................11

15

16 *Micromesh Tech. Corp. v. Am. Recreation Prods., Inc.*,
    No. C-06-6030 MHP, 2007 WL 2501783 (N.D. Cal. Aug. 30, 2007)..................................10

17

18 *Network Caching Tech., LLC v. Novell, Inc.*,
    No. C-01-2079 VRW, 2003 WL 21699799 (N.D. Cal. Mar. 21, 2003) ...............5, 10, 12, 19

19 *Phigenix, Inc. v. Genentech Inc.*,
    No. 15-CV-01238-BLF, 2016 WL 6427884 (N.D. Cal. Oct. 31, 2016)...........................5, 14

20

21 *Q-Pharma, Inc. v. Andrew Jergens Co.*,
    360 F.3d 1295 (Fed. Cir. 2004)......................................................................................13, 14

22

23 *Raylon, LLC v. Complus Data Innovations, Inc.*,
    700 F.3d 1361 (Fed. Cir. 2012)............................................................................................14

24 *Segan LLC v. Zynga Inc.*,
    131 F. Supp. 3d 956 (N.D. Cal. 2015), *appeal dismissed* (Nov. 4, 2015) ....................14, 21

25

26 *Shared Memory Graphics LLC v. Apple, Inc.*,
    812 F. Supp. 2d 1022 (N.D. Cal. 2010) .................................................................................9

27

28 *Smart Wearable Techs., Inc. v. Tomtom, Inc.*,
    No. 3:16-cv-00049-GEC (W.D. Va.)....................................................................................20

DEFENDANT'S RENEWED NOTICE OF MOTION AND MOTION FOR SANCTIONS; MEMORANDUM
OF POINTS AND AUTHORITIES IN SUPPORT THEREOF / CASE NO. 3:17-CV-05068-VC

*TC Heartland LLC v. Kraft Foods Grp. Brands LLC*,
　　137 S. Ct. 1514 (2017) ................................................................................................1

*Townsend v. Holman Consulting Corp.*,
　　929 F.2d 1358 (9th Cir. 1990) .....................................................................................5

*View Engineering, Inc. v. Robotic Vision Systems, Inc.*,
　　208 F.3d 981 (Fed Cir. 2000) ....................................................................11, 13, 16

**Rules**

Fed. R. Civ. P. 5 ...........................................................................................................2

Fed. R. Civ. P. 11 ...............................................................................................*passim*

## I.   INTRODUCTION

SWT never should have filed this lawsuit.  The sole asserted claim of U.S. Patent No. 6,997,882 (the "patent in suit") is directed to a method for monitoring a subject that requires detecting, synchronizing, and displaying six degree of freedom movement information about a body segment.  As explained in Fitbit's pending motion for summary judgment, Fitbit's products do not measure movement in six degrees of freedom and therefore cannot infringe—a fact that SWT would have known had it conducted an adequate pre-filing investigation.  Indeed, there are no non-frivolous claim constructions under which the accused products could infringe multiple elements of the asserted claims.  The suit is, therefore, objectively baseless in violation of Rule 11.  The Court should terminate this action, and award Fitbit, Inc. ("Fitbit") its costs and attorney's fees.

## II.   BACKGROUND

### A.   The Procedural History

SWT filed an original complaint on November 14, 2016, alleging that Fitbit infringed "at least claim 8" of U.S. Patent No. 6,997,882 (the "'882 patent").  ECF No. 1 ¶ 13.

On February 17, 2017 Fitbit filed a motion to dismiss SWT's claims of indirect infringement.  ECF Nos. 27 & 28.  On April 6, 2017 the district court for the Western District of Virginia granted that motion in part, and gave SWT leave to amend.  ECF No. 37.

SWT filed a First Amended Complaint on April 18, 2017.  ECF No. 41.  In this complaint, SWT once again alleged infringement of "at least claim 8" of the '882 patent.  *Id.* ¶ 16.  SWT also re-pleaded its claim for contributory infringement.  On May 9, 2017 Fitbit filed a motion to dismiss this amended complaint's claim for contributory infringement and for induced infringement based on pre-suit knowledge.  ECF No. 42.

Shortly thereafter, in the wake of the Supreme Court's holding in *TC Heartland LLC v. Kraft Foods Grp. Brands LLC*, 137 S. Ct. 1514 (2017), Fitbit filed a motion to transfer this case to the Northern District of California on the grounds of improper venue.  ECF Nos. 52 & 53.

On May 9, 2017 Fitbit made the source code for the accused products available for inspection.  *See* Declaration of Clement S. Roberts in Support of Motion for Sanctions ("Roberts Decl.") Ex. B.

On May 26, 2017 Fitbit's counsel sent SWT's counsel a letter, documentary evidence, and a

signed declaration from a Fitbit senior engineer explaining how and why the hardware and software configuration of the accused Fitbit products meant that those products did not and could not infringe Claim 8 of the '882 patent.  *See* ECF No. 79-08.

On July 7, 2017 Fitbit produced its core technical documents, including over 1,000 pages of technical documents from Fitbit's internal wiki, product specifications, and marketing collateral.  Roberts Decl. Ex. C.

On August 29, 2017, the district court in Virginia granted Fitbit's motion to transfer for improper venue and transferred this case to the Northern District of California.  ECF Nos. 59 & 60.

On September 26, 2017 the parties filed a Joint Case Management Statement.  ECF No. 68.  On October 3, 2017, at the initial CMC, the Court denied Fitbit's motion to dismiss without prejudice and granted Fitbit permission to file an early summary judgment motion.  ECF No. 76.  Fitbit filed that summary judgment motion on October 17, 2017.  ECF No.  80.

Plaintiff filed its opposition to Fitbit's motion for summary judgment on November 17, 2017. ECF No. 95.  On Wednesday, November 22, Fitbit served counsel for SWT with a copy of this motion and the supporting materials pursuant to Federal Rules of Civil Procedure 5 and 11.

**B.      The '882 Patent**

The sole asserted claim of the '882 patent is directed to a method that requires, among other things, obtaining information about the movement of a user's body segment in six degrees of freedom, synchronizing that information with some other kind of physiological information and then displaying the synchronized data to the user.  Claim 8 reads:

> 8. A method of monitoring a subject during a monitoring period, comprising the steps of:
>
> (a) attaching at least one accelerometer module to at least one body-segment of the subject;
>
> (b) acquiring from the acceleration module attached at step (a) acceleration signals representing the accelerations of the body-segment relative to each of the x, y, and z-axes of an [anatomical reference frame][1]

---

[1] The bracketed text is not in the as-printed claim, but was added via a certificate of correction filed prior to this lawsuit.

(c) processing the acceleration signals acquired at step (b) to obtain six degrees of freedom (627 DOF) body segment movement information descriptive of the movements of the body segment with respect to each of the x, y, and z-axes of an inertial reference-frame;

(d) acquiring at least one type of physiological data regarding the subject;

(e) processing the physiological data acquired at step (d) to obtain physiological information regarding the subject;

(f) synchronizing the 6-DOF body-segment movement information obtained at step (c) with the physiological information obtained at step (e) to obtain synchronized 6-DOF body-segment movement information and physiological information; and,

(g) displaying said synchronized 6-DOF body-segment movement information and physiological information obtained at step (f) in at least one format comprehensible to humans.

Roberts Decl. Ex. A ('882 patent), Claim 8.

As explained in the pending motion for summary judgment, the term "six degrees of freedom" or "6-DOF" refers to the fact that a complete description of movement through three-dimensional space involves *six* types of movement: three ***translational*** movement components (the purple arrows) and three ***rotational*** movement components (the yellow arrows):



*See* Roberts Decl. Ex. A ('882 patent) at 1:45–56 and 7:47–54.

As discussed below, SWT's infringement theory violates Rule 11 ***at least*** insofar as it contends that Fitbit's accused products ***obtain*** and ***display*** 6-DOF information about a body segment (limitations 8b, c, and g). In addition, SWT violated Rule 11 by failing to conduct an adequate investigation before making numerous filings.

### III.    ARGUMENT

SWT and its counsel violated Federal Rule of Civil Procedure 11(b) though the following specific conduct:

*Filing the Complaint* (ECF No. 1):  SWT violated Rule 11(b) when it made each of the representations in ¶¶ 9–18 of its original complaint based on an objectively frivolous claim construction position and without performing an adequate pre-filing investigation.

*Filing the First Amended Complaint* (ECF No. 41):  SWT violated Rule 11(b) when it made each of the representations in ¶¶ 8–18 of its First Amended Complaint based on an objectively frivolous claim construction position and without performing an adequate pre-filing investigation.

*Filing the Case Management Conference Statement* (ECF No. 68):  SWT violated Rule 11(b) when, in the Case Management Conference statement, it represented to the Court (in SWT's statement on page 3) that additional discovery was necessary while SWT was on actual notice that Fitbit's products did not and could not infringe, and having failed to perform an adequate pre-filing investigation.  Fitbit contends that this conduct violates Rule 11 both because it: (i) advanced a frivolous legal theory, and (ii) was intended to cause unnecessary delay or needless increase in the cost of litigation.

*Filing the Opposition to Fitbit's Motion for Summary Judgment* (ECF No. 95):  SWT violated Rule 11(b) when it filed its Opposition to Fitbit's Motion for Summary Judgment.  Despite having access to *all* of the source code for the accused devices, Fitbit's core technical documents, and the devices themselves, the Opposition presents *no* evidence that the accused Blaze or Surge devices use or display 6-DOF information.  Fitbit contends that this conduct violated Rule 11 both because it: (i) advanced a frivolous legal theory, (ii) was intended to cause unnecessary delay or needless increase in the cost of litigation, and (iii) as detailed below, is premised on affirmatively misleading factual assertions and characterizations of the evidence.

#### A.    Rule 11 Standards

Pursuant to Federal Rule of Civil Procedure 11(b), an attorney presenting any "pleading, written motion, or other paper" to the Court certifies that he or she has performed "an inquiry reasonable under the circumstances" such that (1) "it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;" (2) "the claims . . . are warranted

by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law;" and (3) "the factual contentions have evidentiary support or . . . will likely have evidentiary support after a reasonable opportunity for further investigation or discovery[.]"  Fed. R. Civ. P. 11(b)(1)–(3).

The application of Rule 11, even in a patent case, is governed by the law of the regional circuit. *See Antonious v. Spalding & Evenflo Cos.*, 275 F.3d 1066, 1072 (Fed. Cir. 2002) ("We apply the law of the pertinent regional circuit when reviewing the imposition of Rule 11 sanctions[.]").  In the 9th Circuit, a court may properly sanction a party under Rule 11 for a frivolous pleading—*i.e.*, a pleading that is: (i) legally or factually baseless from an objective perspective, and (ii) filed without a reasonable and competent prior inquiry.  *See Townsend v. Holman Consulting Corp.*, 929 F.2d 1358, 1362 (9th Cir. 1990); *Christian v. Mattel, Inc.*, 286 F.3d 1118, 1127 (9th Cir. 2002) ("Where, as here, the complaint is the primary focus of Rule 11 proceedings, a district court must conduct a two-prong inquiry to determine (1) whether the complaint is legally or factually 'baseless' from an objective perspective, and (2) if the attorney has conducted 'a reasonable and competent inquiry' before signing and filing it.") (citation omitted); *Phigenix, Inc. v. Genentech Inc.*, No. 15-CV-01238-BLF, 2016 WL 6427884, at *2 (N.D. Cal. Oct. 31, 2016) ("A 'frivolous' argument or claim is one that is 'both baseless and made without a reasonable and competent inquiry.'") (citations omitted).

The Court may also use Rule 11 to "sanction conduct . . . intended 'for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.'" *Network Caching Tech., LLC v. Novell, Inc.*, No. C-01-2079 VRW, 2003 WL 21699799, at *6 (N.D. Cal. Mar. 21, 2003) (citing Fed. R. Civ. P 11(b)).  Under this prong "[o]bjective evidence may be used to demonstrate subjective bad intent." *Id.*  Indeed "[t]he frivolous and improper purpose prongs of Rule 11 overlap, and 'evidence bearing on frivolousness . . . will often be highly probative of purpose.'" *In re Grantham Bros.*, 922 F.2d 1438, 1443 (9th Cir. 1991) (citation omitted).

As discussed below, Fitbit contends that SWT has violated ***both*** prongs of Rule 11.

**B.      SWT's Infringement Allegations are Objectively Baseless**

SWT's infringement theory is objectively baseless for at least two reasons.[2]

*First*, as set forth in Fitbit's pending motion for summary judgment, the accused products do not and cannot infringe under the sole legal theory that SWT has advanced (nor any other which it might invent) because the accused products: (a) lack a functional gyroscope or magnetometer; (b) do not detect movement across six degrees of freedom; and (c) use only one three-axis accelerometer (a fact which makes them physically incapable of obtaining six degree of freedom movement information).  ECF Nos. 79 & 80.[3]  In light of these facts, the Plaintiff's allegation that Fitbit's accused products infringe through their use of a combination of a three-axis accelerometer and a gyroscope[4] has no factual or legal basis.

*Second*, limitation (g) of Claim 8 calls for "displaying said synchronized 6-DOF body-segment movement information and physiological information obtained at step (f) in at least one format comprehensible to humans."  Roberts Decl. Ex. A, Claim 8.  Fitbit's accused devices do not perform this step under ***any*** plausible construction, and SWT's allegation that the accused devices perform this step is (and has always been) without a factual or legal basis.

To start, under the plain language of the claim, the "synchronized 6-DOF body-segment movement information" referenced in limitation (g) is the information "obtained at step (f)."  Step (f), in turn, calls for "synchronizing the 6-DOF body-segment movement information obtained at step (c)" with the users' physiological information.  *Id*.  And step (c) makes it clear that the recited "six degrees of freedom . . . body segment movement information" is "descriptive of the movements of the body

---

[2] SWT's infringement theories have several other problems of roughly equal magnitude.  In the interest of limiting the number of arguments presented to the Court, however, Fitbit is not relying on them to support this motion.

[3] Rather than repeat the evidence and arguments set forth in its summary judgment motion, Fitbit hereby incorporates the motion and its supporting evidence as if fully set forth herein.

[4] As Fitbit's summary judgment motion points out, it also is theoretically possible to collect 6-DOF data using a combination of a three-axis accelerometer and a magnetometer, but SWT has never accused this configuration, and in any event neither device contains an operational magnetometer.  ECF No. 80 at 5 n.1.

segment with respect to each of the x, y, and z-axes of an inertial reference-frame."[5]  *Id*.  Thus, following the chained antecedents, limitation (g) calls for ***displaying*** 6-DOF "body segment movement information descriptive of the movements of the body segment with respect to each of the x, y, and z-axes of an inertial reference-frame" in a way that is ***synchronized*** with the user's physiological information and in a format that is comprehensible to humans.[6]  *Id.*  This chain of antecedents is illustrated in the Appendix attached to the Roberts Declaration.

Fitbit's accused products do not, however, display any information that is "descriptive of the movements of the body segment with respect to each of the x, y, and z-axes of an inertial reference-frame"—much less in six degrees of freedom.  In its infringement contentions, SWT pointed to nothing that could reasonably be considered descriptive of the movement of a body segment (much less the wrist) with respect to each of the x-, y-, and z- axes of an inertial reference frame.  Indeed, the three slides reproduced below are the entirety of SWT's infringement contentions for the Blaze for limitation 8g:

| | |
|---|---|
| Element G | displaying said synchronized 6-DOF body-segment movement information and physiological information obtained at step (f) in at least one format comprehensible to humans. |

The Blaze displays the synchronized information on the display that is part of the wrist unit.

7.  To see a summary of your results, tap the flag icon or press the Action button (upper right).



*(Source: https://staticcs.fitbit.com/content/assets/help/manuals/manual_Blaze_en_US.pdf) at p. 16*

---

[5] According to the specification, an "inertial reference frame" is one that retains its orientation with respect to the earth.  Roberts Decl. Ex. A at 8: 61–64 ("reference-frame 214 retains its orientation with respect to the earth, hence it is referred to herein as an 'inertial reference-frame.'").

[6] In its "definitions" section, the specification declares that "comprehensible to humans—refers to data or information configured or formatted so as to be directly intelligible to humans, if properly displayed." Roberts Decl. Ex. A at 7:61–64.

7

DEFENDANT'S RENEWED NOTICE OF MOTION AND MOTION FOR SANCTIONS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF / CASE NO. 3:17-CV-05068-VC



*(Source: https://www.fitbit.com/app)*



*(Source: https://www.fitbit.com/app)*

DEFENDANT'S RENEWED NOTICE OF MOTION AND MOTION FOR SANCTIONS; MEMORANDUM
OF POINTS AND AUTHORITIES IN SUPPORT THEREOF / CASE NO. 3:17-CV-05068-VC

*See* ECF No. 80-04 at 22–24.  SWT's contentions for the Surge are similar.  *See* ECF No. 80-03 at 23–25.[7]  The ***only*** movement-related data on any of these screens are various summation metrics (*e.g.*, steps taken, miles traveled, floors climbed, hours slept, or miles run)—none of which are "descriptive of the movements of the body segment with respect to each of the x, y, and z-axes of an inertial reference-frame."  A step count, for example, does not describe how the user's wrist[8] (or any other body segment) moves in any (much less ***each***) of the x-, y-, and z-axis of an inertial reference frame.  The number of floors climbed is no different: it does not even provide the user's displacement along the vertical axis because it counts absolute—and not ***net***—floors climbed.  Thus, a user who walks up and down 10 flights of stairs to return to her starting point will be shown to have climbed 10 floors (with no information about her net travel along the vertical axis).  Nor does displaying a number of such summation metrics (*e.g.*, time elapsed, steps taken, and miles traveled) together somehow become "information descriptive of the movements of a body segment with respect to each" of the three Cartesian axes.  Put differently, from knowing a users' step count, one cannot even tell whether that user moved forward, backward, or marched in place, or whether s/he was moving uphill or downhill.  And, as detailed above, floors climbed is no better.  One certainly cannot tell from either metric (nor any other metric displayed by the accused devices) ***anything*** about how that user's wrist[9] rotated relative to any (much less each) axis of an inertial reference frame.

---

[7] It is proper for the Court to look to SWT's infringement contentions to evaluate whether Rule 11 sanctions are appropriate.  *See Shared Memory Graphics LLC v. Apple, Inc*., 812 F. Supp. 2d 1022, 1025 (N.D. Cal. 2010) ("[B]y compelling the plaintiff to crystallize its theory of infringement and flesh out all the facts that it has to supports its theories, ICs can lay the groundwork for a subsequent Rule 11 by exposing early on an inadequate pre-filing inquiry.").

[8] Under a proper claim construction, the display must show the movement of the body segment to which the accused device is attached.  This is so because: (i) the "body segment movement information" displayed in limitation (g) is the same information "obtained at step (f)"; (ii) the body segment movement information obtained in step (f) is the same information "obtained at step (c)"; (iii) the "body segment movement information" processed in step (c) is descriptive of the movements of "the body segment"; and (iv) the antecedent for "the" is the body segment to which the "accelerometer module" is attached in step (a).  Again, this chain of antecedents can most easily be seen by looking at the annotated Claim 8 attached as the Appendix to the Roberts Declaration.

[9] Both of the accused Fitbit products are strapped to a user's wrist, and that is the body segment that SWT accused for claim limitation 8(a).  ECF No. 80-03 at 8; ECF No. 80-04 at 7.

9

Put differently, SWT's claim was baseless because: (i) the claims require displaying 6-DOF information about the movement of the body part to which the accused sensor is attached with respect to *each* of the x-, y- and z- axis of an inertial reference frame; (ii) Fitbit's product displays only cumulative totals of various movement activities; and (iii) none of those totals tell the user anything about how the body part to which the sensor is attached has moved with respect to each of the six translational and rotational components of any 6-DOF framework—much less one that is fixed relative to the earth.

*Both* of these fundamental flaws have existed since the start of the case.  Thus, *each* of the challenged pleadings has been, at the time it was filed, objectively baseless and without merit.

### C.   SWT's Prefiling Investigations Were Inadequate

SWT did not perform an objectively reasonable pre-filing investigation for any of its challenged papers.  For purposes of this analysis, it is useful to divide the challenged pleadings into two groups: (1) those filed before Fitbit's letter of May 26, 2017 informing SWT that the accused devices did not have a working gyroscope and could not infringe, and (2) those filed after.

### 1.   The Pre-May 26, 2017 Filings

Both courts in this district and the Federal Circuit have issued several opinions discussing what constitutes an adequate pre-filing investigation.  In these opinions, both courts consistently have held that an adequate pre-filing investigation requires a plaintiff to obtain and examine the allegedly infringing product prior to filing suit where it is practical to do so.

For example, in *Network Caching Tech.*, 2003 WL 21699799, the district court considered whether a plaintiff had conducted an adequate pre-filing investigation where it had relied on marketing materials, but had not obtained nor examined the accused product.  The court found that, under those circumstances, the plaintiff ("NCT") had:

> failed to conduct a reasonable pre-filing investigation.  NCT does not deny that it had the ability to obtain the allegedly infringing products and examine them to determine, for example, whether they operated materially in the manner described by the marketing materials. . . .  NCT's failure to examine the accused products directly is both preposterous and unjustified.  Accordingly, the court concludes that its pre-filing investigation was unreasonable and does not comport with the requirements of FRCP 11.

*Id.*, at \*7.  *See also Micromesh Tech. Corp. v. Am. Recreation Prods., Inc.*, No. C-06-6030 MHP, 2007

1    WL 2501783, at *3 (N.D. Cal. Aug. 30, 2007) (Under Rule 11 "a plaintiff must obtain a sample or copy

2    of the accused device, unless there is an adequate explanation for failing to do so.") (citations omitted).

3         *View Engineering, Inc. v. Robotic Vision Systems, Inc*., 208 F.3d 981 (Fed Cir. 2000), also is

4    instructive.  In that case Robotic was sanctioned for violating Rule 11 by filing counterclaims that alleged

5    patent infringement.  The Federal Circuit found that the pre-filing investigation was inadequate because

6    the patentee, Robotic, "never had physical access to any of the [accused] machines" and instead based its

7    allegation only on what Robotic "could learn about View's machines from publically available

8    information and View's literature." *Id.* at 985.  Importantly, in that case, Robotic **asked** View for

9    permission to inspect the accused devices, which View refused.  As a result, when faced with the Rule 11

10   motion Robotic argued that "[s]ince View refused to permit examination of its machine or drawings,

11   there was no way for [Robotic] to determine if View was actually infringing . . . until [Robotic] had an

12   opportunity to complete at least preliminary discovery." *Id*.  But the Federal Circuit found that this was

13   not an adequate excuse and that Robotic's pre-suit investigation was inadequate. *Id*.; *see also Judin v.*

14   *United States*, 110 F.3d 780, 784 (Fed. Cir. 1997) ("No adequate explanation was offered for why

15   [plaintiff] failed to obtain, or attempted to obtain, a sample of the accused device from the Postal Service

16   or a vendor so that its actual design and functioning could be compared with the claims of the patent.

17   Under these circumstances, there is no doubt that Judin failed to meet the minimum standards imposed

18   by Rule 11[.]"); *cf. Intamin Ltd. v. Magnetar Techs., Corp.*, 483 F.3d 1328, 1338 (Fed. Cir. 2007) (no

19   violation of Rule 11 where "the technology presented the patentee with unreasonable obstacles to any

20   effort to obtain a sample of Magnetar's amusement ride brake system, let alone the difficulty of opening

21   the casing" and where plaintiff had conducted a physical inspection of the brakes, taken photos and

22   discussed them with an expert prior to filing suit).

23        Fitbit's accused products are, by contrast, readily obtainable.  For example, each of the Fitbit

24   Blaze and the Surge can be ordered on Amazon.com and delivered within two days for under $200.  *See*

25   Roberts Decl. Exs. D & E.  Given the ease (and speed) with which the products can be obtained, SWT

26   was obligated to obtain and examine the devices as part of an adequate pre-filing investigation.

27        Had SWT obtained and examined the accused devices prior to filing suit, it could easily have

28   determined that the sole theory of infringement it has advanced in this case (*i.e.* that the accused products

gather 6-DOF information using the combination of a three-access accelerometer and a gyroscope[10]) was wrong.  As shown by the TechPats declaration and exhibits (submitted in connection with Fitbit's summary judgment motion) a simple *visual* inspection of the interior of the Blaze (which can be accessed using readily available hand tools) is sufficient to confirm that it does not contain a gyroscope.  ECF No. 80-14 (Demarest Decl.) ¶¶ 5–8.  And for the Surge, all that one would need to do is perform a simple monitoring test on the exposed pins for the chip that contains the gyroscope to determine that the chip is not configured to (and does not in fact) send data to the Surge's processor.  *Id.* ¶ 17.  Put differently, SWT could have readily obtained the accused products, opened them, and determined that its infringement theory was incorrect.  SWT therefore failed to conduct a reasonable pre-filing investigation from the outset.[11]

Presumably, SWT will argue that its investigation was reasonable insofar as it relied on Fitbit marketing materials that said (incorrectly) that the accused products contained a gyroscope.  Not so.

*First*, as the cases cited above show, where a plaintiff can easily obtain the accused products, relying solely on marketing materials is not a sufficient pre-filing investigation.  *See, e.g.*, *Network Caching*, 2003 WL 21699799, at *7.

*Second*, the relevant Fitbit marketing materials did *not* say that Fitbit calculates or uses 6-DOF data—either using the gyroscope or otherwise.  ECF No. 80-03 at 12; ECF No. 80-04 at 11.  All those

---

[10] *See* ECF No. 1 (original complaint) ¶ 13 (accusing a gyroscope); ECF No. 41 (First Amended Complaint) at ¶ 13 & ¶ 16 (accusing a gyroscope); ECF No. 80-03 (Surge infringement contentions) at 12 (accusing a gyroscope); ECF No. 80-04 (Blaze infringement contentions) at 11 (accusing a gyroscope).

[11] For the first time, in its opposition to Fitbit's motion for summary judgment, SWT advances a new theory based on schematics not of either of the accused devices, but of a "non-form-factor" circuit board used solely in development and measuring "6 inches by 4 inches," which made the collection of "motion data" not "practical."  Roberts Decl. Ex. F at 199:23–200:4.  (By contrast, the accused Blaze and Surge activity trackers measure less than one square inch and are strapped to a user's wrist like a watch.)  At the outset, nowhere has SWT accused any "non-form-factor" devices used solely by Fitbit in internal development—both its complaint and infringement contentions accused only the Blaze and Surge activity trackers.  Even if it were accused, SWT's "non-form-factor" board theory fails because, at best, it shows only that the non-form-factor board has hardware *theoretically capable* of collecting 6-DOF information, not that the device in fact *collects or uses or displays* 6-DOF information (much less synchronized with some physiological information), as the only asserted claim requires.

1   documents say is that the Fitbit products **contain** a gyroscope.  But there are many ways one could use a

2   three axis accelerometer and a gyroscope **other than** to calculate 6-DOF information.  *See* Declaration of

3   Joseph Paradiso in Support of Motion for Sanctions ("Paradiso Decl.") ¶ 4.  For example, a three axis

4   accelerometer and a gyroscope can be used together to detect falls, determine the tilt of the device, or

5   figure out what activity a user is performing—without calculating 6-DOF information.  *Id.*  In fact, the

6   level of precision afforded by 6-DOF is rarely needed in consumer-grade fitness devices.  *Id.*  Thus, mere

7   knowledge that a product contains a three-axis accelerometer and a gyroscope does not provide a factual

8   basis to plead that the product is calculating six degree of freedom information.  As a result, SWT cannot

9   simply point to the marketing materials' reference to a gyroscope and say that the reference, on its own,

10  satisfied SWT's obligation to conduct an adequate pre-filing investigation into whether the products

11  gather 6-DOF information.  Instead, SWT **should have obtained** the accused products and attempted to

12  confirm its **suspicion** that Fitbit was using the gyroscope referenced in the marketing materials to collect

13  6-DOF information—*e.g.*, by inspecting its output to see whether the device performs functions for

14  which 6-DOF is necessary, seeing whether its sensors respond to rotational and translational movement

15  around all three axes, and so on.  *See View Engineering*, 208 F.3d at 984–85.  Had SWT obtained an

16  accused product and performed even simple visual and electrical inspections of the relevant components,

17  it would immediately have found that it had no basis (at a minimum) to allege that the accused products

18  use a gyroscope to gather 6-DOF information.[12]

19          Moreover, even if the Court were to conclude that SWT could reasonably have relied on the

20  marketing materials' reference to a gyroscope as a basis to allege that Fitbit's accused products **detected**

21  6-DOF motion, SWT's investigation **still** was inadequate with respect to limitation (g) of Claim 8.  As

22  noted in the previous section, SWT's allegation that Fitbit's devices meet this limitation is baseless—

23

---

24  [12] This case is therefore unlike *Q-Pharma, Inc. v. Andrew Jergens Co.*, 360 F.3d 1295, 1302–03 (Fed.

25  Cir. 2004), where the Federal Circuit held that reliance on the label of a moisturizing lotion that the
    lotion contained a particular chemical compound obviated the need for a chemical analysis as part of the

26  pre-filing investigation because the plaintiff reasonably interpreted the claims as requiring no specified
    minimum of the compound in question, and thus its mere presence in any amount would support

27  infringement.  Here, by contrast, the mere presence of a gyroscope in the device is not, by itself,

28  conclusive or even particularly suggestive of infringement, and so the law required more.

because the Fitbit products do not ***display*** any 6-DOF information for a user's wrist relative to an inertial reference frame.  Nothing about the fact that the marketing materials (incorrectly) mentioned a gyroscope could possibly excuse that failure.

"In the context of patent infringement actions" the Federal Circuit has "interpreted Rule 11 to require, at a minimum, that an attorney interpret the asserted patent claims and compare the accused device with those claims before filing a claim alleging infringement."  *Q-Pharma, Inc. v. Andrew Jergens Co.*, 360 F.3d 1295, 1300–01 (Fed. Cir. 2004); *see also Antonious*, 275 F.3d at 1072 ("This court has construed Rule 11, in the context of patent infringement actions, to require that an attorney interpret the pertinent claims of the patent in issue before filing a complaint alleging patent infringement."); *Phigenix*, 2016 WL 6427884, at *2 ("The Federal Circuit, applying Ninth Circuit law, stated that the second prong—a reasonable and competent inquiry—in the patent context requires 'at a minimum, that an attorney interpret the asserted patent claims and compare the accused device with those claims before filing a claim alleging infringement.'") (quoting *Q-Pharma*, 360 F.3d at 1300).

Given that no reasonable attorney could conclude that Fitbit's products ***display*** the information recited in the final limitation of Claim 8, SWT's counsel violated Rule 11 by filing the original and First Amended Complaint.  *See Segan LLC v. Zynga Inc.*, 131 F. Supp. 3d 956, 963 (N.D. Cal. 2015), *appeal dismissed* (Nov. 4, 2015) ("the attorney's pre-filing interpretation of the claims must be nonfrivolous" and awarding Rule 11 sanctions because "the claim construction position taken by the Blank Rome attorneys fell below that threshold."); *Raylon, LLC v. Complus Data Innovations, Inc.*, 700 F.3d 1361, 1368 (Fed. Cir. 2012) (where "a claim construction is 'so unreasonable that no reasonable litigant could believe it would succeed' . . . [it] warrants Rule 11 sanctions") (citation omitted).  Put differently, SWT's prefiling investigation was inadequate because no reasonable attorney—looking at the marketing materials or the accused devices—could conclude that they display 6-DOF information about the movement of a user's arm with respect to each of the x-, y-, and z- axes of an inertial reference frame.

### 2.    The Post-May 26, 2017 Filings

On May 26, 2017 undersigned counsel sent SWT's counsel a letter, a declaration and supporting documentation showing that SWT's theory of infringement was wrong ***and*** that Fitbit's devices could not possibly infringe.  ECF No. 79-08.  Fitbit's letter did not focus on SWT's claim construction, since SWT

1    already had all of the information needed to conclude that its construction of the "displaying" limitation

2    was objectively unreasonable and had clearly made the judgment to proceed on that basis regardless.

3    Instead, Fitbit focused on what appeared to be new information to SWT; namely that neither accused

4    device had a working gyroscope or magnetometer, and that it is impossible to collect 6-DOF data using

5    the devices' three-axis accelerometer.  *Id.*  At the time Fitbit sent this letter, it already had made the

6    source code for the accused products available for inspection and had corrected the marketing materials

7    that were on its own website to remove any reference to a gyroscope or a magnetometer.  *Id.*; *see also*

8    Roberts Decl. Ex. B.

9         As a result, when SWT filed its sections of the Joint CMC Statement (ECF No. 68) in this Court,

10   and when it opposed Fitbit's motion for summary judgment (ECF No. 95), SWT was on actual notice

11   that its only asserted infringement theory was wrong, and that Fitbit's products did not infringe.  Despite

12   this, SWT still failed to take reasonable steps to investigate the basis for its allegations.  Most notably

13   SWT ***declined*** to promptly come examine Fitbit's source code.  Indeed, the first visit anyone from SWT

14   made to Durie Tangri's offices was on September 28, 2017, nearly five months after Fitbit made the

15   source code available.  Roberts Decl. ¶ 6.  Thus, when SWT filed the Joint CMC Statement; and its

16   opposition to Fitbit's motion for summary judgment, it did so in violation of Rule 11.  *See* Fed. R. Civ. P.

17   11 advisory committee's notes to 1993 amendment (the changes to Rule 11 "emphasize[] the duty of

18   candor by subjecting litigants to potential sanctions for insisting upon a position after it is no longer

19   tenable"); *Battles v. City of Ft. Myers*, 127 F.3d 1298, 1300 (11th Cir. 1997) (noting that Rule 11 "allows

20   sanctions when an attorney continues 'insisting upon a position after it is no longer tenable'").

21        Presumably, SWT will attempt to deflect from this failure by claiming that Fitbit's refusal to

22   produce additional documents interfered with its ability to investigate.  Indeed, that is the excuse SWT

23   has consistently provided for its refusal to review the source code.  Roberts Decl. Exs. B–C, G–K.  But

24   that argument must fail because (among other things) SWT's claim that it needed more documents before

25   it could hope to understand the code was pretextual.  For example, SWT claimed at one point that it

26   could not review the source code without physical schematics for the accused devices.  Roberts Decl. Ex.

27

28

DEFENDANT'S RENEWED NOTICE OF MOTION AND MOTION FOR SANCTIONS; MEMORANDUM
OF POINTS AND AUTHORITIES IN SUPPORT THEREOF / CASE NO. 3:17-CV-05068-VC

L.  This is a poor excuse: (a) the **physical** layout of chips on the board has nothing to do with whether the **logical** functions to initialize the chips are invoked in the source code,[13] and even if it did, (b) as demonstrated by the TechPats declaration, the physical relationships between the chips can be determined through a visual inspection.  ECF No. 80-14.  Thus **even to the extent** the physical layout of the accused devices were relevant to understanding the source code, SWT could have obtained the relevant information by looking at the accused products.  Nor should the Court allow a plaintiff to avoid confirming the facts that have been made available to it—especially where, as here, SWT did not even **try** to review the source code before claiming that it couldn't possibly understand it or the specific functions which Fitbit had identified.

The record in this case is, in many respects, similar to the one at issue in *View Engineering*.  In that case, Robotic failed to inspect the accused product, and then tried to blame that failure on the accused infringer.  *View Eng'g*, 208 F.3d at 985.  The Federal Circuit did not buy it, and pointed out that View "had four months to conduct a reasonable inquiry . . . [it] had the opportunity to file immediately for the protective order that eventually resulted in discovery, to appoint an outside expert to review View's machines, to talk to Robotic's sales corps to learn what it knew of View's machines—in other words to conduct some form of reasonable inquiry."  *Id*. at 986.  The same is true here.  SWT only disclosed an expert under the protective order on October 18—after the case was transferred, and after the CMC.  And, that expert has never traveled to California to review the source code.  Roberts Decl. ¶ 17.  SWT has had six months since Fitbit's letter to review Fitbit's code, to purchase the products and examine them, to move to compel any specific documents that it needed—"in other words to conduct some form of reasonable inquiry."  It cannot credibly blame Fitbit for those failures.

Finally, there is **no** excuse for SWT's failure to dismiss this case after it received Fitbit's motion for summary judgment and supporting papers.  Whatever else SWT might have thought prior to that time, with a fully briefed summary judgment motion and supporting declarations, it had no reasoned basis to continue this case.  Moreover, the record is clear that, at the time SWT filed its opposition to Fitbit's motion for summary judgment, SWT's counsel **knew** that its infringement theory was baseless.

---

[13] *See* Paradiso Decl. ¶ 5.

16

DEFENDANT'S RENEWED NOTICE OF MOTION AND MOTION FOR SANCTIONS; MEMORANDUM
OF POINTS AND AUTHORITIES IN SUPPORT THEREOF / CASE NO. 3:17-CV-05068-VC

Just a week before filling its opposition, SWT filed a patent owner's response to a petition for *inter partes* review filed by another defendant, TomTom.  In that opposition, SWT claimed that one of the asserted prior art references was ***"not capable"*** of collecting 6-DOF information "because it is implemented with only a 2 or 3-axis accelerometer for obtaining movement data" and as such cannot obtain the 6-DOF data with respect to an anatomical reference frame as required by limitation (b) of claim 8, which would then be usable to derive 6-DOF data relative to an inertial reference frame.  Roberts Decl. Ex. M (SWT's preliminary response to IPR) at 21.  That is ***precisely*** what Fitbit has been telling SWT about its own devices since May.  One would think that, having agreed with this position in a PTAB filing, and having seen virtually every conceivable piece of evidence that the Blaze and the Surge use ***only*** a single three-axis accelerometer to record movement, SWT would have declined to continue to pursue this case, and instead focused on opposing TomTom's IPR.  But instead of withdrawing, SWT doubled down—filing a motion to compel additional (irrelevant) documents, subjecting a Lead Research Scientist at Fitbit to a deposition (which lasted a full day but in which Mr. Niehaus was never asked whether either of the accused devices obtain or use 6-DOF information), and filing a scattershot opposition to Fitbit's summary judgment motion.

SWT's opposition to Fitbit's motion perhaps most starkly illustrates why SWT's conduct violates Rule 11 and warrants sanctions.  In its motion, SWT ***again*** agreed that it is impossible to collect 6-DOF information using only a 3-axis accelerometer.  ECF No. 95 at 6.  But, despite having access to ***all*** of the Fitbit source code for the accused products, Fitbit's core technical documents, the accused products themselves, and the deposition of Fitbit's lead research scientist, SWT presented no evidence that the accused devices collect or use 6-DOF information.  Instead, as Fitbit's reply will further detail, SWT mischaracterized the record in an effort to sow confusion and metaphysical doubt about the clear and unrebutted evidence that neither the Blaze nor the Surge obtain or use 6-DOF information.  In addition to the fact that SWT filed an opposition devoid of ***any*** evidence that either accused device in fact obtains or uses 6-DOF information, SWT's opposition was deliberately misleading in at least the following ways:

- falsely asserting that the accused products "are, in fact, implemented with several motions sensors" which are "***initialized via source code at startup***," citing only Paragraph 9 of SWT's expert's declaration (which says no such thing) for that proposition, and then

repeating this false assertion elsewhere with no citation, *see* ECF No. 95 at 2;

- deceptively mischaracterizing the testimony of Logan Niehaus, Fitbit's lead research scientist, that he did not review every single ***intermediate bug fix*** source code release in preparing his declaration as an admission that he lacked personal knowledge of the facts to which he was testifying concerning his review of every single *bona fide* (*i.e.*, non-bug fix) release of the code, *compare* ECF. No. 95 at 3, 9-10 with ECF No. 95, Ex. A (Niehaus Dep.) at 33:13–35:23;

- falsely asserting that "[t]he Accused Products ***Derive*** 6-DOF Information"—a proposition SWT knows it must support with evidence to avoid summary judgment—but providing ***no*** evidence of that fact and instead arguing that the accused devices contain hardware arrangements ***capable*** of collecting 6-DOF information,[14] *see* ECF No. 95 at 14;

- attempting to portray an inconsequential error in Mr. Niehaus's declaration that ***he himself flagged during his deposition***[15] as rendering Mr. Niehaus's conclusions incorrect, when Mr. Niehaus explained in detail ***why*** the error was immaterial to his conclusions and offered to walk SWT's counsel through the source code demonstrating the accuracy of his conclusions (but SWT declined), *compare* ECF No. 95 at 10 *with* Roberts Decl. Ex. F at 142:22–147:12.

In short, over the course of more than a year, and despite being afforded every opportunity to bow out, SWT has continued to file frivolous papers in an effort to keep alive a lawsuit that was baseless from the outset.

---

[14] As will be detailed in Fitbit's reply in support of its summary judgment motion, because the sole asserted claim requires actual ***use*** of 6-DOF information—as distinct from, for example, a "capability" claim that requires for infringement only hardware "capable of collection 6-DOF information"—whether the accused devices contain sensors ***capable*** of collection 6-DOF information is immaterial at this juncture. Indeed, as noted in its summary judgment motion, Fitbit does not dispute that the hardware components of the Surge—if they were in fact all operable and combined with the necessary logic—***could*** collect 6-DOF information. However, the fact of them matter—as demonstrated by the undisputed record—is that the device does ***not*** in fact collect or use 6-DOF information.

[15] The declaration stated that a hexadecimal address of the chip containing the gyroscope was not "referenced" in the Surge's firmware source code, where it is in fact referenced, but never executed in a way that initializes the chip at issue. Niehaus Decl., ¶ 7; Roberts Decl. Ex. F at 148:19-149:10.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**D.      SWT's Conduct Violated the "Improper Purpose" Prong of Rule 11.**

As noted at the outset, Rule 11 allows the Court to "sanction conduct . . . intended 'for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.'"  *Network Caching*, 2003 WL 21699799, at *6 (quoting Fed. R. Civ. P. 11(b)).

Fitbit is not contending that the filing of the initial complaint or the filing of the amended complaint violated this prong of Rule 11.  However, since Fitbit put SWT on notice (on May 26, 2017) that its sole basis for infringement was demonstrably false, SWT's actions have been intended to "cause unnecessary delay or needless increase in the cost of litigation.'"  Indeed, since that time SWT:  (a) has declined to drop its allegations that the accused products infringe through the use of a gyroscope (most likely because SWT has not been able to figure out any *other* viable theory it could substitute for its discredited one); (b) has repeatedly insisted that it could not review or evaluate the evidence that Fitbit provided (*e.g.* the source code and a declaration explaining the relevant functions) without expansive and burdensome and irrelevant document productions; (c) opposed Fitbit's request for an early adjudication of the non-infringement issue that Fitbit brought to SWT's attention; (d) has declined to dismiss this case even after receiving a copy of that summary judgment motion and even after agreeing, in a parallel proceeding, with the fundamental point that it is impossible for devices like the Blaze and the Surge (which use only a 3-axis accelerometer to track movement) to infringe Claim 8; (e) opposed summary judgment in a misleading filing that provides *no* evidence in support of SWT's claim that the accused devices "derive 6-DOF information" despite having access to every non-cumulative source of pertinent evidence; and (f) has declined to dismiss this case even after receiving a copy of this Rule 11 motion.  It is difficult to imagine how a plaintiff who lacks *any* viable infringement theory and knows (to a moral certainty) that the only infringement theory it has ever asserted is wrong could do *more* to show that it had an improper motive to prolong litigation and to harass the defendant.

**E.      The Court Should Award Material Sanctions**

Courts generally aim to set Rule 11 sanctions "at a level 'sufficient to deter repetition of such conduct or comparable conduct by others similarly situated.'"  *Clinton v. Jones*, 520 U.S. 681, 709 n.42 (1997) (quoting Fed. R. Civ. P. 11(c)(2)).  Given the record in this case, Fitbit respectfully submits that only a very material sanction is likely to accomplish that goal.

1    *First*, the plaintiff in this case is owned by Wi-LAN Inc. ("Wi-LAN").  ECF No. 2.  Wi-LAN

2    (recently re-branded Quarterhill Inc.) is a publically traded patent assertion entity that owns tens of

3    thousands of patents and has filed (on its own or through affiliates like SWT) lawsuits against hundreds

4    of defendants, often including entire industries.  *See* Roberts Decl. Exs. N–S.  In short, the Plaintiff here

5    is a large, well-funded, and sophisticated repeat litigant.  It should know better.

6    *Second*, the attorneys who have prosecuted this suit have also prosecuted *other* suits on these

7    same patents that like the current lawsuit lack merit.  For example, SWT filed suit on this same patent

8    claim against Microsoft, TomTom, Huawei, LG, and Motorola.  But it does not appear that any of those

9    companies display 6-DOF information about the movement of the body part on which the accused device

10   is worn with respect to each of the x-, y-, and z- axis of an inertial reference frame, as Claim 8 requires.

11   For example, SWT's infringement contentions against TomTom (the only other defendant against whom

12   SWT has not yet dismissed its complaint) are substantively identical to SWT's contentions against Fitbit,

13   identifying calories burned, distance, average pace, altitude, and speed as the alleged "6-DOF body-

14   segment movement information."  *See* Roberts Decl. Ex. T (excerpts of infringement charts served by

15   SWT in *Smart Wearable Techs., Inc. v. Tomtom, Inc.*, No. 3:16-cv-00049-GEC (W.D. Va.)).  As

16   demonstrated above, there can be no plausible claim that any of this information constitutes the claimed

17   "6-DOF body-segment movement information."  *See supra* § III.B.  In short, SWT is not merely a

18   subsidiary of a repeat player:  it has been conducting a widespread *campaign* of frivolous litigation

19   against numerous targets.

20   *Third*, the attorneys who prosecuted this suit *refused* to conduct an adequate investigation into

21   their claims even after they were repeatedly warned.  This is not a case where the defendant jumped

22   straight to the remedy of Rule 11.  Instead, Fitbit wrote SWT a letter, made its code and documents

23   available (even though the lack of infringement would have been apparent from a simple inspection of

24   the accused devices), and then repeatedly urged Plaintiff's counsel to come review that code to satisfy

25   themselves that Fitbit was not infringing.  Moreover, at the Case Management Conference the Court

26   itself warned SWT that it would not hesitate to impose sanctions—*including* on SWT's counsel.  Roberts

27   Decl. Ex. U at 8:20–9:7.  SWT's refusal to cease its frivolous litigation *even at that point* shows a degree

28   of boldness that will require a very material sanction to correct.

1    **Fourth**, this Court has previously warned litigants, in a published opinion that "they could be

2    held jointly and severally liable under Rule 11 for an entire section 285 fee award if they file such an

3    objectively baseless patent infringement suit in the future." *Segan*, 131 F. Supp. 3d at 964.  Despite this

4    warning, and despite the fact that this very case was brought to the attention of SWT's counsel when

5    undersigned counsel served them with a copy of this motion, SWT's counsel did not change course.

6    Put differently, there is every reason to believe that SWT's counsel are unrepentant about their

7    conduct, and that a substantial penalty will be needed to change their behavior.

8    **IV.    CONCLUSION**

9    For the foregoing reasons, the Court should exercise its discretion under Rule 11 to dismiss this

10   action with prejudice, to award Fitbit its costs and attorney's fees to date (in an amount to be determined

11   in further briefing), to order SWT's counsel to submit a copy of this Court's sanctions order in all other

12   cases involving SWT, and any additional sanctions the Court determines to be just and proper.

13

14   Dated:  December 14, 2017                              DURIE TANGRI LLP

15

16                                              By:  _____*/s/ Clement S. Roberts*_____
                                                              CLEMENT S. ROBERTS
17
                                                       Attorney for Defendant
18                                                     FITBIT, INC.

19

20

21

22

23

24

25

26

27

28

DEFENDANT'S RENEWED NOTICE OF MOTION AND MOTION FOR SANCTIONS; MEMORANDUM
OF POINTS AND AUTHORITIES IN SUPPORT THEREOF / CASE NO. 3:17-CV-05068-VC

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 21, 2018 the within document was filed with the Clerk of the Court using CM/ECF which will send notification of such filing to the attorneys of record in this case.

_/s/ Clement S. Roberts_

CLEMENT S. ROBERTS

DEFENDANT'S RENEWED NOTICE OF MOTION AND MOTION FOR SANCTIONS; MEMORANDUM
OF POINTS AND AUTHORITIES IN SUPPORT THEREOF / CASE NO. 3:17-CV-05068-VC