DURIE TANGRI LLP
CLEMENT S. ROBERTS (SBN 209203)
croberts@durietangri.com
TIMOTHY C. SAULSBURY (SBN 281434)
tsaulsbury@durietangri.com
EUGENE NOVIKOV (SBN 257849)
enovikov@durietangri.com
217 Leidesdorff Street
San Francisco, CA  94111
Telephone:    415-362-6666
Facsimile:    415-236-6300

Attorneys for Defendant
FITBIT, INC.

# IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| SMART WEARABLE TECHNOLOGIES, INC., | Case No. 3:17-cv-05068-VC |
| Plaintiff, | **DEFENDANT FITBIT, INC.'S NOTICE OF MOTION AND MOTION FOR ATTORNEY FEES AND COSTS UNDER 35 U.S.C. § 285** |
| v. | |
| FITBIT, INC., | Date:    May 10, 2018 |
| Defendant. | Time:    10:00 a.m.<br>Ctrm:    4, 17th Floor<br>Judge:  Honorable Vince Chhabria |

**NOTICE OF MOTION AND MOTION**

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on May 10, 2018, at 10:00 a.m. in Courtroom 4, 17th Floor of the San Francisco Courthouse, U.S. District Court for the Northern District of California, 450 Golden Gate Avenue, San Francisco, CA 94102, or as soon thereafter as the Court may deem appropriate, Defendant Fitbit, Inc. ("Fitbit") will appear before the Honorable Vince Chhabria and present Fitbit's Motion Fees and Costs under 35 U.S.C. § 285 as well as its concurrently filed Motion for Sanctions Under Rule 11 ("Renewed Rule 11 Mot.").

Fitbit asks the Court to find that this case is exceptional, that SWT's counsel has violated Rule 11, to award Fitbit its reasonable attorney fees and costs, to hold SWT and its counsel jointly and severally liable therefor, and to issue such other sanctions as the Court finds appropriate.

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION .................................................................................1

II.   BACKGROUND ....................................................................................2

    A.    SWT Continued Asserting an Infringement Theory It Knew To Be Wrong........................2

    B.    SWT Offered Conflicting Excuses for Maintaining Its Infringement Theory....................3

III.  ARGUMENT ..........................................................................................5

    A.    The Substantive Baselessness of SWT's Case Makes It Exceptional. ................5

        1.    SWT Had No Basis to Allege That Fitbit's Products Calculated 6-DOF...............6

        2.    SWT Had No Basis to Allege That Fitbit's Products Display 6-DOF. ..................6

        3.    SWT's Substantive Case Became Even Weaker On May 26, 2017. .......................9

    B.    SWT's Unreasonable Litigation Conduct Warrants an Exceptional Case Finding. ...........9

        1.    SWT Failed To Conduct an Adequate Pre-filing Investigation..............................9

        2.    SWT Failed to Appropriately Respond to Fitbit's Letter. ....................................10

        3.    SWT Asserted New (Meritless) Theories In Response To Summary Judgment. ........................................................................................11

    C.    Fitbit's Fees Are Reasonable. ..........................................................12

    D.    The Court Should Award Fitbit Its Expert Fees Under the Court's Inherent Power.........14

    E.    The Court Should Hold SWT's Counsel Jointly And Severally Liable. ...........................14

IV.  CONCLUSION......................................................................................15

1

## **TABLE OF AUTHORITIES**

2

**Page(s)**

3

**Cases**

4

5

*AdjustaCam, LLC v. Newegg, Inc.*,
861 F.3d 1353 (Fed. Cir. 2017)...............................................................................5, 8, 12

6

7

*Bywaters v. United States*,
670 F.3d 1221 (Fed. Cir. 2012)...............................................................................13

8

*Digital Empire Ltd v. Compal Electronics Inc. Group*,
No. 14cv1688 DMS (KSC), 2015 WL 11570939 (S.D. Cal. Dec. 11, 2015)....................11

9

10

*Hunter's Edge, LLC v. Primos, Inc.*,
No. 1:14-cv-00249-MHT-WC, 2016 WL 9244954 (M.D. Ala. Sept. 6, 2016)...................11

11

*ICON Health & Fitness, Inc. v. Octane Fitness, LLC*,
706 F. App'x 666 (Fed. Cir. 2017) .........................................................................5

12

13

*Johnson v. Comm'r of Internal Revenue*,
289 F.3d 452 (7th Cir. 2002) ................................................................................15

14

15

*MarcTec, LLC v. Johnson & Johnson*,
664 F.3d 907 (Fed. Cir. 2012)................................................................................14

16

*Mathis v. Spears*,
857 F.2d 749 (Fed. Cir. 1988)................................................................................12, 13

17

18

*My Health, Inc. v. ALR Technologies, Inc.*,
No. 2:16-cv-00535-RWS-RSP, 2017 WL 6512221 (E.D. Tex. Dec. 19, 2017)..................13

19

20

*Octane Fitness, LLC v. Icon Health & Fitness, Inc.*,
134 S. Ct. 1749 (2014)........................................................................................1, 5

21

*Q-Pharma, Inc. v. Andrew Jergens Co.*,
360 F.3d 1295 (Fed. Cir. 2004)..............................................................................12

22

23

*Segan LLC v. Zynga Inc.*,
131 F. Supp. 3d 956 (N.D. Cal. 2015) .....................................................................*passim*

24

25

*ThermoLife Int'l, LLC v. Myogenix Corp.*,
No. 13CV651, 2017 WL 1235766 (S.D. Cal. Apr. 4, 2017) ...........................................9, 10

26

*Wood v. McEwen*,
644 F.2d 797 (9th Cir. 1981) ................................................................................15

27

28

*Yufa v. TSI Inc.*,
No. 09-CV-01315, 2014 WL 4071902 (N.D. Cal. Aug. 14, 2014) ..................................10

DEFENDANT FITBIT, INC.'S NOTICE OF MOTION AND MOTION FOR ATTY. FEES UNDER
35 U.S.C. § 285 / CASE NO. 3:17-CV-05068-VC

**Statutes**

18 U.S.C. § 1821(b) ................................................................................................................14

35 U.S.C. § 285 .................................................................................................................*passim*

**Rules**

Fed. R. Civ. P. 54(d)(1) ..........................................................................................................13

Fed. R. Civ. P. 56(d) ..............................................................................................................5

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

2

**I.      INTRODUCTION**

3

On February 1, 2018, the Court granted Fitbit's motion for summary judgment of non-

4

infringement, finding that "the record contains no evidence that the Blaze and the Surge do what SWT

5

alleges." D.I. 80 at 1. This ruling came after more than a year of litigation, during which Fitbit spent

6

more than $700,000 to defend itself. While the burdens of litigation are, ordinarily, a cost of doing

7

business, this case is exceptional both because of the substantive baselessness of SWT's positions, and

8

because of the unreasonable manner in which SWT litigated. *See Octane Fitness, LLC v. Icon Health &*

9

*Fitness, Inc.*, 134 S. Ct. 1749 (2014).

10

***First***, SWT's lawsuit was substantively groundless from the start because: (i) while Fitibit's

11

documents said that the accused products contained a gyroscope, SWT had no basis to allege that either

12

accused product calculated 6-DOF information, either using that gyroscope or otherwise; and (ii) SWT's

13

assertion that the products ***displayed*** "the accelerations of the body-segment relative to each of the x, y,

14

and z-axes" of a Cartesian reference frame when it displayed a user's step count was based on a frivolous

15

claim construction position. Indeed, that position was so frivolous that SWT has now abandoned it—but

16

has done so in favor of an equally frivolous position that conflicts with SWT's statements to the PTO.

17

***Second***, last May, Fitbit gave SWT definitive evidence that: (i) one of the two accused devices

18

did not contain the accused gyroscope; (ii) the gyroscope in the other device was not operational; and (iii)

19

the products contained only one operative sensor—which meant that, as a matter of physics, they could

20

not calculate six degrees of freedom ("6-DOF"). Despite this evidence, SWT continued to assert the

21

same baseless infringement theory all the way through summary judgment in January.

22

***Third***, SWT litigated this case in an unreasonable manner. Among other things: (i) SWT refused

23

to examine Fitbit's source code until late September; and (ii) opposed Fitbit's summary judgment motion

24

with a series of new (and equally baseless) infringement theories that were not in SWT's contentions and

25

which SWT never sought leave to add.

26

Many of these issues overlap with those presented in Fitbit's concurrently re-filed Rule 11

27

motion. This motion assumes familiarity with that pleading and endeavors not to repeat the arguments

28

1  therein.[1]

2  **II.    BACKGROUND**

3      The briefs Fitbit has filed in support of summary judgment and its motion for Rule 11 sanctions

4  contain a detailed explanation of the asserted patent and claim, and the conduct of SWT and its counsel

5  up to the filing of SWT's summary judgment opposition.  We will not repeat those facts here but, for the

6  Court's convenience, a timeline of those events is attached as Appendix A.

7      **A.     SWT Continued Asserting an Infringement Theory It Knew to Be Wrong.**

8      On January 25, 2018, despite the uncontroverted evidence that neither accused device has an

9  operable gyroscope, SWT appeared at the summary judgment hearing and said that it opposed summary

10 judgment based on its the infringement theory in its infringement contentions—namely that the accused

11 Fitbit products used a gyroscope to calculate 6-DOF information:

12      **MR. VOWELL:** That first question is, yes, we do believe they still – that it's – at least
        for purposes of summary judgment on this record, that summary judgment should be
13      denied based on our current infringement theory.

14                                          ***

15      **MR. VOWELL**: No, your honor. We believe they infringed based on the use of an
        accelerometer plus at least one other sensor. ***Originally we thought it was the gyroscope.***
16      ***We still believe that is true***. But there are other sensors . . . . [S]o we believe there may be
        additional theories of infringement that we would assert . . . .
17

18 Decl. of Clement S. Roberts in support of Motion ("Roberts Decl.") Ex. A at 9:2–5; 10:15–25.  SWT's

19 counsel did (shortly after this assertion) concede that SWT's current "infringement theory" was wrong

20 with respect to the Blaze, which lacks a gyroscope.  *Id.* at 11:2–14.  But the point remains that, even at

21 the summary judgment hearing, SWT repeatedly asserted that it was maintaining its theory that, at least

22 as to the Surge, Fitbit infringed through the use of a gyroscope.

23      This was remarkable because, at this point, SWT had ***no*** evidence that the Surge contained an

24 operable gyroscope, much less that it used it to calculate 6-DOF information.  Fitbit conclusively proved

25

26 _____
   [1] This court has previously held that sanctions under § 1927 require a culpability showing ***greater*** than
27 that required by Rule 11.  *Segan LLC v. Zynga Inc.*, 131 F. Supp. 3d 956, 965 n.3 (N.D. Cal. 2015).  For
   this reason, and because Fitbit is moving for sanctions under Rule 11, it is not moving for the duplicative
28 relief provided by § 1927.

1   that point by showing (among other things) that the gyroscope's chip select pin was deactivated.  SWT

2   responded by claiming that its expert had refuted that evidence:

> **MR. VOWELL:** Your honor, I think there were a number of points that we already
> addressed in our briefs, but I think it's important to point out in specific to the chip
> select pin that was mentioned quite a number of times – and this is addressed in our
> brief – and Mr. Monaco, our expert, does address that, that is, in only one mode that
> that particular chip select pin is required the SPI mode. And that's – for the record,
> that's the Demarest declaration, page 5, paragraph 5.

7   *Id.* at 41:8–16.  This was a false statement.  The Monaco declaration **never addresses** the status of the

8   gyroscope's chip select pin, states that it is activated, or claims that the chip acts in some mode other than

9   SPI.  *See* ECF No. 99-4 at 3–4.  That is why SWT's counsel only cited the declaration of Fitbit's expert

10  (Mr. Demarest) and did not even attempt to cite a supporting passage *from the Monaco declaration*.[2]

11       **B.      SWT Offered Conflicting Excuses for Maintaining Its Infringement Theory.**

12       During the summary judgment hearing, the Court repeatedly asked SWT why, if it had some

13  other theory of infringement, it never moved to amend its contentions.  In response, SWT's counsel

14  asserted that they had not sought leave to amend because they were distracted by Fitbit's motion to

15  change venue.  Roberts Decl. Ex. A at 6:11–7:13; 19:19–22.  This assertion is not credible.  First, during

16  the period between Fitbit's May letter and the October CMC, Fitbit wrote Plaintiff four separate times

17  reminding SWT that it had "no infringement case because neither accused device makes use of sensors

18  (or a combination of sensors) capable of capturing six degrees of freedom information" and "urg[ing]

19  [SWT] to review the source code demonstrating these basic facts about how the devices work."  Roberts

20  Decl. Exs. B–E.  In response, SWT did not claim that it had been distracted, and nor did it promise to

21  promptly review the code.  Instead, SWT claimed that it had taken no action because it could not review

22  the code without additional documents.  Roberts Decl. Ex. B.  When Fitbit produced those documents,

23  SWT again made no efforts to review the code, prompting Fitbit to again urge SWT to review the source

24

25  _____

26  [2] It is worth noting that the Monaco declaration explicitly says that the Surge is configured with "input
    and output connections for serial communication over the serial peripheral interface (SPI.)"  Monaco

27  Decl. ¶ 23, ECF No 94-6. In other words, not only is there nothing in the Monaco declaration to suggest
    that the Surge does **not** use SPI, the declaration affirmatively says that the sensors **are** connected though
    SPI.

28

DEFENDANT FITBIT, INC.'S NOTICE OF MOTION AND MOTION FOR ATTY. FEES UNDER
35 U.S.C. § 285 / CASE NO. 3:17-CV-05068-VC

1  code "as soon as possible":

> It is now (1) more than two months since we made available the source code demonstrating we can't possibl[y] infringe, (2) seven weeks since we wrote you (and provided a declaration from Fitbit's Lead Research Scientist) explaining why your infringement case is without basis, and (3) **over a week since we've produced the technical documentation you said you needed to review the source code**. To date, you have not made arrangements to review our source code. At this point, we have genuine concerns that your demand for technical documents was merely a pretext for stringing this case along while keeping SWT ignorant of the source code demonstrating that SWT has no infringement case. . . . In any case, **we again urge you to please make arrangements, as soon as possible, to come review Fitbit's source code**.

*Id.* (emphasis added). Again, SWT did not respond to this request by saying it had been distracted, or with a promise to review the code as soon as possible. And it did not *actually* come review the code until two and a half months later. In short, SWT's suggestion that it was so distracted that it somehow lost track of the need to validate its infringement theory is incompatible with the record.

Even if it *were* true that SWT had been distracted by Fitbit's transfer motion, that motion was fully decided in August. ECF. No. 60. Fitbit's summary judgment motion was not heard until late the following January. ECF. No. 119. During the interim, Fitbit: (i) contacted SWT multiple times urging its counsel to come look at the code; (ii) submitted a CMC statement noting that SWT's theory was wrong; (iii) conducted a meet and confer between lead counsel about those precise statements in the CMC statement; (iv) requested, at the CMC, permission to file for summary judgment on this basis; (v) filed its summary judgment motion; and (vi) when SWT opposed summary judgment rather than drop the case, served SWT with a Rule 11 motion. Roberts Decl. Exs B–E; Ex. F (CMC Hrg. Tr.) at 2:18–3:4; ECF No. 68 (CMC Statement) at 3–4; ECF No. 80 (Summary Judgment); ECF No. 102. SWT was not "distracted" by the motion to transfer during this period.

Perhaps recognizing this issue, at the summary judgment hearing, SWT's counsel (under questioning from the Court) switched from contending that SWT was distracted by the transfer motion to arguing that it was inhibited by Fitbit's Rule 11 motion. Roberts Decl. Ex. A at 16:21–19:18. It is hard to see why a Rule 11 motion (especially one based on the premise that SWT' ongoing assertion of a frivolous and demonstrably incorrect infringement theory was sanctionable) would have kept SWT from seeking to amend its infringement contentions. Indeed, Rule 11 requires a three-week safe harbor between service and filing in order to allow and encourage a respondent to change course.

1      When the Court pointed **this** problem out to SWT, its counsel switched excuses once again,

2   saying that SWT had not amended its contentions because "even with the summary judgment record the

3   way it is, it is still a bit unclear as to which of the additional sensors is – and so it wasn't – we did not

4   want to have to come ask the Court a second or third time to amend the contentions." *Id*. at 20:1–24.  In

5   other words, despite its access to Fitbit's internal technical documents, the products' source code, and a

6   deposition of a senior Fitbit engineer, SWT was still without **any** theory that it was willing to stand

7   behind.  Despite this, SWT did not dismiss its existing (incorrect) theories, or move for additional

8   discovery under Fed. R. Civ. P. 56(d).

9      On February 1, after more than 14 months of litigation, the Court granted Fitbit's motion for

10   summary judgment. ECF No. 123.  The Court found that the evidence conclusively shows that the Blaze

11   has no gyroscope, and the Surge does not have an operable one.  The Court also held that SWT's new

12   theories were "unsubstantiated and outside the scope of SWT's infringement contentions" and that Fitbit

13   would be entitled to summary judgment even if they had been properly alleged.  ECF No. 123 at 2–3.

14   **III.   ARGUMENT**

15      The fee-shifting provision for patent cases, 35 U.S.C. § 285, states "[t]he court in

16   exceptional cases may award reasonable attorney fees to the prevailing party."  Under the Supreme

17   Court's decision in *Octane Fitness*, 134 S. Ct. at 1756, an exceptional case is one that, considering the

18   totality of the circumstances, "stands out from others with respect to the substantive strength of a party's

19   litigating position (considering both the governing law and the facts of the case) or the unreasonable

20   manner in which the case was litigated." *Octane Fitness*, 134 S. Ct. at 1756.  A litigant may show that it

21   is entitled to fees under Section 285 by a preponderance of the evidence. *Id*. at 1758.

22      Since *Octane*, the Federal Circuit has made it clear that an unreasonable claim construction

23   position can justify an exceptional case finding. *AdjustaCam, LLC v. Newegg, Inc.*, 861 F.3d 1353,

24   1360–61 (Fed. Cir. 2017); *ICON Health & Fitness, Inc. v. Octane Fitness, LLC*, 706 F. App'x 666, 669

25   (Fed. Cir. 2017).  The Federal Circuit also has held that a weak infringement lawsuit can become

26   baseless after case events make clear that infringement is impossible. *AdjustaCam*, 861 F.3d at 1360.

27      **A.    The Substantive Baselessness of SWT's Case Makes It Exceptional.**

28      This case was filed based on a **guess** about how Fitbit's products worked and a claim

interpretation that no reasonable lawyer would have advanced.  After May 26, 2017, its substantive weakness was compounded by the fact that SWT was given detailed factual notice and evidence that Fitbit's accused devices did not and could not infringe.

### 1.    SWT Had No Basis to Allege That Fitbit's Products Calculated 6-DOF.

As explained in Fitbit's motion for Rule 11 sanctions, there is no dispute about the fact that Fitbit's product documentation incorrectly said that the accused products contain a gyroscope.  But this does not change the fact that SWT had no basis to allege that either device used a gyroscope to *calculate* 6-DOF data.  Renewed Rule 11 Mot. at 12–13; ECF No. 102-1 ¶ 5.  Among other things SWT had: (a) no documents indicating that the products calculated or used 6-DOF information; (b) no statements from anyone at Fitbit asserting or suggesting that the accused products calculate 6-DOF information; and (c) no physical evidence or testing results supporting such a conclusion.  And, SWT simultaneously ignored contrary evidence, such as the fact that consumer grade devices do not need 6-DOF to do things like count steps, and the fact that companies tend to *advertise* (not conceal) advanced features like 6-DOF tracking.  *See* Renewed Rule 11 Mot. at 6.  Thus, SWT's claim that Fitbit used a gyroscope to calculate 6-DOF data was exceptionally weak from the beginning.

### 2.    SWT Had No Basis to Allege That Fitbit's Products Display 6-DOF.

SWT filed this case based on a frivolous interpretation of Claim 8's "displaying" limitation.  As detailed in our Rule 11 motion, the only asserted claim of the patent in suit requires "displaying said synchronized 6-DOF body-segment movement information and physiological information obtained at step (f) in at least one format comprehensible to humans."  Renewed Rule 11 Mot. at 6–10 (citing '882 patent, Claim 8).  The chain of antecedents in Claim 8 make it unambiguous that the "body-segment movement information" displayed in the final limitation is the "body segment movement information descriptive of the movements of the body segment with respect to each of the x, y, and z-axes of an inertial reference frame" recited in step (c) of the claim.  *Id*. at 7.

SWT's infringement contentions asserted that the "displaying" limitation was met by the display of metrics like step count, distance traveled, time elapsed, and calories burned.  The excerpts reproduced below (from SWT's contentions) show: (i) the Fitbit instrumentalities SWT accused of meeting the "synchronized 6-DOF body-segment movement information" limitation outlined in green; and (ii) the

1   instrumentalities SWT alleged to be the "synchronized . . . physiological information" outlined in blue:




Roberts Decl. Ex. G at 23, 24; *id.* Ex. H at 22, 23 (colors in original).

The metrics SWT outlined in green are not—and cannot reasonably be interpreted to be—a display of the movement of the user's wrist in six degrees of freedom. As explained in the Rule 11 motion, metrics like step count give no information about the movement of the ***body*** relative to any axis of a Cartesian reference frame, much less information about the movement of the user's ***wrist*** relative to one (much less all three) of those axes. ECF No. 102 at 9. Thus, from the very beginning, SWT had no reasonable basis to allege that the accused Fitbit products met the "displaying" limitation.

For this reason SWT, in its opposition to Fitbit's Rule 11 motion, changed its interpretation of the claims. In particular, SWT argued (for the first time) that the requirement of "displaying synchronized 6-DOF body-segment movement information and physiological information" encompassed displaying any information "derived" from the recited information. ECF No. 108 at 12. Put differently, SWT took the position that, where Claim 8 calls for the display of synchronized ***body segment movement*** and ***physiological*** information, the claim requires displaying ***neither***—and instead encompasses the display of any value that had been ***calculated from*** that data. But this position is no better than the one SWT started with. Among other things, it contradicts the language of the claim (which says nothing about derivation), is inconsistent with the specification (which distinguishes between "deriving" and "synchronizing"), and bears no relationship to the plain meaning of "synchronized" (*i.e.*, "to represent or arrange (events) to indicate coincidence or coexistence"). *See* Renewed Rule 11 Mot. at 6.

Indeed, SWT has made representations both to the district court and to the PTAB that are contrary

1    to the interpretation that SWT adopted in response to Fitbit's motion for sanctions.  In its opposition to

2    Fitbit's motion to transfer, for example, SWT asserted that Claim 8 required obtaining "6-DOF data

3    descriptive of the movement of a subject which is synchronized and displayed *with* the physiological

4    data, such as the heart rate of the subject."  ECF No. 54 at 1 n.1 (emphasis added).  At least in June 2017,

5    then, SWT still believed that "synchronized" meant that the 6-DOF body segment movement information

6    and the physiological data would be displayed *with* each other.

7            Then, in November, SWT told the PTAB that another defendant's construction of

8    "synchronizing" rendered the "displaying" limitation superfluous because "the limitation 'displaying said

9    synchronized 6-DOF body-segment movement information and physiological information' ***necessarily***

10   ***implicates*** 'represent[ing] or arrang[ing] two or more things so as to indicate that they occurred

11   simultaneously.'"  Ex. I at 10 (emphasis added).  This, too, is consistent with SWT's contentions and

12   contradicts the reading SWT advanced in response to Fitbit's Rule 11 motion.

13           In short, both SWT's original infringement theory and the claim construction it advanced in

14   response to Fitbit's Rule 11 motion, are so weak as to be exceptional under §285.  As in *Segan LLC v.*

15   *Zynga Inc.*, the asserted claim "describes an invention very different" from the operation of the accused

16   products.  131 F. Supp. 3d at 960.  As described in the specification, the benefit of "displaying

17   synchronized 6-DOF body-segment movement information and physiological information obtained at

18   step (f) in at least one format comprehensible to humans" was to obtain an improved way of determining,

19   for example, "whether the subject is horizontal or vertical, or whether he/she is changing from vertical to

20   horizontal . . . combined with data regarding physiological status" for uses such as monitoring the well-

21   being of the elderly.  Ex. J at 3:5–59.  And the examples the specification gives for displaying 6-DOF

22   movement data are things like a "virtual pelvis."  *Id.* at 14:42–26.  No reasonable lawyer would have read

23   the patent and concluded that displaying metrics like step count or distance traveled falls within the scope

24   of Claim 8.

25           Much like the plaintiff's interpretation of "access" to mean "send" in *Segan*, 131 F. Supp. 3d at

26   961, or the plaintiff's interpretation of "rotation around a single axis" to mean "rotation around two axes

27   but only one at a time" in *Adjustacam*, 861 F.3d at 1360–61, SWT's reading of "displaying said

28   synchronized 6-DOF body-segment movement information and physiological information" to encompass

displaying **step count** is and was "so unreasonable as to make this case 'exceptional' within the meaning of section 285, even without reference to [its] litigation conduct." *Segan*, 131 F. Supp. 3d at 962-63.

### 3. SWT's Substantive Case Became Even Weaker On May 26, 2017.

On May 26, 2017, Fitbit sent SWT a letter explaining that the accused products: (i) lack any operational gyroscopes; (ii) have only one active movement sensor (a three-axis accelerometer); and (iii) do not and cannot calculate 6-DOF movement data. Roberts Decl. Exs. K & L. With this letter, Fitbit sent SWT: (i) a bill of materials for the Blaze; and (ii) a sworn declaration both stating that the accused products did not calculate 6-DOF information and naming the functions that SWT would need to examine in the source code to verify this assertion. Roberts Decl. Ex. L. Thus, at least as of May 26, 2017, SWT was on **actual notice** that its case was substantively baseless.

Yet, SWT never dropped or sought leave to amend its infringement theory. Indeed, SWT came to the summary judgment hearing asserting that at least the Surge calculated 6-DOF information through the use of a gyroscope. *See* Roberts Decl. Ex. A at 9:2–5 and 10:15–11:14. Those claims were meritless, and SWT's pursuit of them despite that lack of merit makes this case stand out from others.

### B. SWT's Unreasonable Litigation Conduct Warrants an Exceptional Case Finding.

### 1. SWT Failed To Conduct an Adequate Pre-filing Investigation.

As detailed in Fitbit's Rule 11 motion, SWT failed to perform a reasonable pre-suit investigation. Renewed Rule 11 Mot. at 10-14. Had SWT acquired samples of the accused devices and opened them up to look inside—as Federal Circuit law requires—there would (at a minimum) have been one fewer accused device in this case. *Id.* And, if SWT had performed even rudimentary testing on the products— akin to the testing performed by third-party TechPats and attached to Fibit's summary judgment papers— it would not have filed this lawsuit at all. *Id.* at 12; ECF No. 80-14. SWT's failure to do even these basic things before filing a complaint weights in favor of awarding sanctions under § 285.

As a point of comparison, in *ThermoLife Int'l, LLC v. Myogenix Corp.*, No. 13CV651, 2017 WL 1235766, at *6 (S.D. Cal. Apr. 4, 2017), the court found that the plaintiff's failure to conduct an adequate pre-filing investigation weighed in favor of an exceptional case finding. In that case, the court found that the plaintiffs "nowhere indicate that they relied on anything other than advertisements before bringing suit" and had ignored information (that could have been obtained by acquiring and examining the

products' labels) tending to show that some of the accused products did not infringe. *Id*. at *5. And, while the plaintiff argued that the information it might have obtained from such an examination was contradicted by the defendant's own statements, the court found that this was no excuse; noting that the "arguably misleading advertising does not sanction [plaintiff's] prior complete failure to examine the actual ingredients contained in Defendants' products." *Id*. at *6. The court concluded "that had Plaintiffs conducted any reasonable pre-filing investigation, they would have been on notice that at least some of the products in this litigation could not have infringed. . . . Accordingly, this weighs in favor of a finding of this case being 'exceptional' for purposes of awarding attorney fees." *Id*. at *7; *see also Yufa v. TSI Inc*., No. 09-CV-01315, 2014 WL 4071902, at *3 (N.D. Cal. Aug. 14, 2014) (plaintiff's failure to obtain the accused product "suggests that Plaintiff did not conduct an adequate investigation prior, at the very least, to filing his first amended complaint, and weighs in favor of finding that this case is exceptional.").

The same thing is true here. SWT did not conduct an adequate pre-filing investigation, and that failure should weigh in favor of a sanctions award.

## 2. SWT Failed to Appropriately Respond to Fitbit's Letter.

SWT responded to Fitbit's May 26 letter by doing . . . nothing. SWT not only refused to dismiss this case, but also: (i) refused multiple invitations to inspect Fitbit's source code; (ii) expressed no interest in deposing the engineer who provided the declaration until October, and (iii) made no attempt to amend its infringement contentions. Roberts Decl. Exs. B–E *id*.; Ex. A at 3:20–9:1. Instead of addressing the flaws in its infringement case, SWT demanded that Fitbit produce documents that were both cumulative of Fitbit's prior productions and irrelevant to the flaws that Fitbit had pointed out.[3] In fact, it was not until the case management conference forced SWT's counsel to travel to San Francisco that they finally inspected Fitbit's source code—and, even then, they did not bring an expert. Roberts Decl. Ex. M. Nor were these SWT's only efforts to avoid dealing with its flawed infringement theory. For instance, when SWT eventually took the deposition of Logan Niehaus (a Lead Research Scientist at

---

[3] The irrelevance of the materials SWT demanded is discussed extensively elsewhere. *See* Renewed Rule 11 Mot. at 15–16; ECF No. 86 at 3–5. For that reason, Fitbit does not repeat that discussion here.

1    Fitbit), it did not even ***ask*** him whether the accused products performed 6-DOF calculations, much less

2    whether other sensors (beyond a gyroscope) were used for that purpose.

3            SWT's failure to address the problems in its case is exacerbated by the fact that SWT has offered

4    a shifting set of excuses for its failure to act, including the pendency of the transfer motion, the Rule 11

5    motion, and a supposed lack of information about Fitbit's products (despite, *e.g.*, unfettered access to the

6    source code, the deposition of Mr. Niehaus, and SWT's inability even to identify, at the CMC or its

7    motion to compel, any other documents that it needed).  *See supra* at II.B; ECF No. 88; Roberts Decl. Ex.

8    F at 15:3–22:9.

9            Other courts have found that conduct like SWT's warrants an exceptional case finding. For

10   example, in *Hunter's Edge, LLC v. Primos, Inc.*, No. 1:14-cv-00249-MHT-WC, 2016 WL 9244954, at *5

11   (M.D. Ala. Sept. 6, 2016), the Court awarded fees in part because "[w]hen Plaintiff's counsel was placed

12   on notice, repeatedly, of the apparent lack of merit of Plaintiff's infringement claim, Plaintiff persisted in

13   pressing its claim and thereby forced Defendant to file for summary judgment."  And in *Digital Empire*

14   *Ltd v. Compal Electronics Inc. Group*, No. 14cv1688 DMS (KSC), 2015 WL 11570939, at *6–9 (S.D.

15   Cal. Dec. 11, 2015), the court sanctioned a plaintiff who responded to notice and evidence that the named

16   defendants never made or sold the accused products by refusing for months to either dismiss the case or

17   come forward with contrary evidence. *Id*.  SWT's conduct was no better, and in many ways worse, than

18   both of these defendants.  That should weigh in favor of finding this case to be exceptional.

19           **3.      SWT Asserted New (Meritless) Theories In Response To Summary Judgment.**

20           SWT responded to Fitbit's summary judgment motion by raising new (meritless) infringement

21   theories it had never asserted in any set of infringement contentions. SWT served its infringement

22   contentions in April 2017, and an amended set later that month.  *See* Roberts Decl. Exs. N & O.  Both

23   sets (in attached charts) asserted that the accused devices infringed using an accelerometer and a

24   gyroscope. Roberts Decl. Ex. G at 12–14; Ex. H at 11–13; Ex. P at 12–14; Ex. Q at 11–13. Yet, when it

25   filed its summary judgment opposition, SWT argued that:

26   - The Blaze infringes using a magnetometer instead of a gyroscope (even though Fitbit had
         provided clear evidence that the magnetometer was inoperable).  ECF. No. 95 at 14–15.

27   - The Surge infringes using a second accelerometer (even though Fitbit had provided clear
         evidence that the second accelerometer was inoperable).  ECF. No. 95 at 15–16.

28

---

11

- The Blaze had an alternate configuration reflected in the schematic for a "non-form factor" board that showed a second accelerometer, despite the fact that Mr. Niehaus testified (and SWT's own expert admitted) that the board is merely "an internal development tool" manufactured with additional components for testing an experimentation, was never sold to customers, and was likely never used with motion data.  ECF No. 95 at 12, 14–15; ECF No. 95-01 ¶ 15; Roberts Decl. Ex. R at 191:12–192:4.

- Fitbit might be infringing through some unspecified device allegedly corresponding to a patent Fitbit filed for in 2015.  ECF No. 95 at 17–10.

- The Court should deny summary judgment because SWT intended to accuse another Fitbit device, called the Ionic, even though it had been announced four months earlier and released two months prior to SWT's opposition, and SWT had not sought leave to add it to the case.  *See* ECF No. 95 at 4, 18–19.

SWT's attempt to change theories in its summary judgment opposition ***without*** seeking leave to amend is the kind of "dubious conduct" that weighs in favor of an exceptional case finding.  *AdjustaCam*, 861 F.3d at 1361 (submitting supplemental expert reports and declarations making untimely new infringement arguments is "dubious behavior" weighing in favor of an exceptional case finding); *Segan*, 131 F. Supp. 3d at 961–62 (noting, in finding a fees award warranted, that the plaintiff proposed a brand new theory for the first time during the claim construction process).

In short, SWT: (i) filed a baseless case without an adequate pre-suit investigation (where such an investigation would have ruled out, at least in part, the asserted claim of infringement); (ii) refused to change course even after Fitbit produced definitive evidence and a sworn declaration demonstrating that it did not infringe under SWT's only infringement theory and could not infringe as a matter of physics; (iii) responded with a series of never-before-seen arguments when Fitbit moved for summary judgment; and (iv) premised its infringement theory with respect to the "displaying" limitation on a frivolous claim construction position, and then (when confronted) changed that theory in ways that contracted SWT's own statements to the PTO.  That is unreasonable conduct rendering this an exceptional case.

### C.    Fitbit's Fees Are Reasonable.

Section 285 permits the award of "reasonable" attorneys' fees in an exceptional case. Federal Circuit law controls the calculation of reasonable attorney fees in a patent infringement case. *Q-Pharma, Inc. v. Andrew Jergens Co.*, 360 F.3d 1295, 1299 (Fed. Cir. 2004).  "Normally this will encompass all hours reasonably expended on the litigation."  *Mathis v. Spears*, 857 F.2d 749, 755–56 (Fed. Cir. 1988). The Federal Circuit has endorsed the "lodestar" approach to calculating reasonable attorneys' fees, which

1   requires multiplying the number of hours reasonably expended by a reasonable hourly rate. *Bywaters v.*

2   *United States*, 670 F.3d 1221, 1225–26 (Fed. Cir. 2012).  It has also held that, courts may consider

3   factors such as the "amount involved and results obtained," the sophistication of the work, and the

4   client's fee agreement.  *Id.* at 1231–32.

5       Fitbit's attorneys, and paralegals at Durie Tangri have spent a total of 1084 hours on this case

6   from the time it was filed through submission of this motion.  Declaration of Eugene Novikov ("Novikov

7   Decl.") at ¶¶ 13, 15, 17, 19, 23–26.  Those hours include time working on motions, invalidity

8   contentions, meeting and conferring, and appearing in Court. A detailed breakdown of hours expended

9   and the corresponding fees incurred at Durie Tangri's prevailing rates[4] is shown in the Declaration of

10  Eugene Novikov, which also sets forth the qualifications of the timekeepers and the types of work

11  performed.[5]   The breakdown also includes reasonable costs that are recoverable under Section 285,

12  *Mathis*, 857 F.2d at 754, 757–58, but not under Fed. R. Civ. P. 54(d)(1).  The total through submission of

13  this motion is $685,613.41 and we estimate that an additional $35,750 will be incurred through the

14  resolution of this matter at the district court level, for a total of $721,363.41.  Novikov Decl. ¶¶ 29, 33.

15  The Declaration also provides a breakdown of fees and costs incurred before and after May 26, 2017, in

16  the event that the Court is inclined only to award fees incurred since that date.[6]

17      Notably, Fitbit is not seeking fees for the *inter partes reexamination* it filed against the patent in

18  suit.  Although courts have awarded IPR fees in similar situations, *My Health, Inc. v. ALR Technologies,*

19  *Inc.*, No. 2:16-cv-00535-RWS-RSP, 2017 WL 6512221, at *6 (E.D. Tex. Dec. 19, 2017), Fitbit did not

20  *need* to bring the IPR to prevail in this case because there is not (and never has been) a viable

21  infringement theory.

22

23  [4] Durie Tangri's prevailing rates for the timekeepers on this matter (a senior partner and two senior
    associates) are reasonable relative to prevailing market rates for San Francisco Bay Area Intellectual
    Property litigators.  *See* Novikov Decl. ¶¶ 3, 5, 7.

24
    [5] These are the rates that Fitbit actually has and does currently pay in matters where it retains Durie
25  Tangri on an hourly basis.  *Id.*

26  [6] Fitbit's fee deal with Durie Tangri in this matter was based in part on a flat monthly fee.  The fees Fitbit
    is seeking for time expended to date (based on the attorneys' hourly rates) are slightly less than those
27  incurred through February under that arrangement.  Novikov Decl. ¶¶ 27–28.  Fitbit is likewise seeking
    its anticipated fees based on a conservative estimate of its attorneys' hourly rates in completing briefing
28  and argument on this motion.  *Id.*

**D.     The Court Should Award Fitbit Its Expert Fees Under the Court's Inherent Power.**

While Section 285 does not expressly authorize the payment of expert witness fees in excess of the $40 per day provided by 18 U.S.C. § 1821(b), "a district court has inherent authority to impose sanctions in the form of reasonable expert fees in excess of what is provided for by statute." *MarcTec, LLC v. Johnson & Johnson*, 664 F.3d 907, 921 (Fed. Cir. 2012) (internal quotation marks omitted). While "not every case that qualifies as exceptional under Section 285 will also qualify for sanctions under the court's inherent power," an award of expert fees is justified, for example, when the adverse party "pressed forward after receiving documentary evidence that refuted its allegations." *Id.*

In this case Fitbit expended $28,041.50 in expert fees for the preparation of the following materials:

(1) The declaration of Dr. Joseph Paradiso, Alexander W. Dreyfoos Professor at the Massachusetts Institute of Technology, in support of Fitbit's motion for summary judgment.

(2) The declaration of Scott Demarest, an electrical engineer who performed the teardown and electrical testing of the accused devices, in support of Fitbit's motion for summary judgment.

(3) The declaration of Dr. Paradiso in support of Fitbit's motion for Rule 11 sanctions.

*See* Novikov Decl. ¶ 31.   None of these expenses would have been necessary had SWT not pressed forward with its frivolous infringement theory after Fitbit's May 26 letter.   Because these expert fees were only incurred after SWT had ample time to course-correct, Fitbit asks the Court to award them.

**E.     The Court Should Hold SWT's Counsel Jointly And Severally Liable.**

In *Segan*, this Court awarded defendant Zynga its entire sum of attorneys' fees and costs and held the plaintiff's attorneys liable for $100,000 of the award.   *Segan*, 131 F. Supp. 3d at 964.   While this Court declined to hold plaintiff's counsel jointly and severally liable for the entire fee award, this Court wrote that the $100,000 sanction and the Court's opinion "puts similarly-situated attorneys on notice of the possibility" that they could be held jointly and severally liable for the whole award.   *Id.*

In this case, the Court should hold SWT's counsel jointly and severally liable for the entire award for at least three reasons.   ***First***, the facts rendering this case exceptional are inextricably intertwined with the actions of SWT's counsel.   It was SWT's outside counsel who brought this case without performing an adequate pre-suit investigation and who refused to drop the case in the face of definitive evidence that Fitbit's products cannot infringe.   ***Second***, this Court expressly warned SWT's counsel that they could be

liable for fees in the case management conference (Roberts Decl. Ex. F at 8:20–22 & 15:21–25) and SWT has been aware of this Court's decision in *Segan* at least since November.  Thus, SWT's counsel has been aware of and has acted despite repeated warnings about the possibility of sanctions.  ***Third***, SWT has refused to provide assurances that it is sufficiently capitalized to satisfy a Section 285 award and both SWT and its parent company (WiLan) have refused to escrow the money that would be needed to satisfy a fee award.  Roberts Decl. ¶ 21 & Ex. S.  There is, therefore, a real possibly that WiLan will respond to a fee award by simply throwing SWT (which is just a shell company) into bankruptcy while walking away from the fee award.

Among other things, this would mean that the fee award will have no corrective impact on WiLan's conduct *or* its attorneys.  Indeed, this is one of ***many*** cases that SWT's counsel has brought (and settled) on the patent-in-suit based on the same (frivolous) claim construction argument.  Renewed Rule 11 Mot. at 20.  If SWT's counsel faces no repercussions from this lawsuit, they will have profited from their overall course of conduct and will not be dissuaded from bringing this kind of case in the future. *See Wood v. McEwen*, 644 F.2d 797, 802 (9th Cir. 1981) (awarding fees in part on "[t]he filing of this and thirty-six other cases, which repeatedly raise the same claims"); *Johnson v. Comm'r of Internal Revenue*, 289 F.3d 452, 456–57 (7th Cir.2002) ("The Tax Court was not required to ignore [the attorney's] bad conduct in other cases; indeed, it would have been remiss not to consider it.").

## IV.    CONCLUSION

Fitbit respectfully requests that the Court find this case exceptional pursuant to Section 285, award Fitbit its attorneys' fees and costs as enumerated in the supporting Novikov declaration, and hold SWT's counsel jointly and severally liable for the award pursuant to Rule 11.

Dated:  February 21, 2018                     DURIE TANGRI LLP


                                              By:  _____*/s/ Clement S. Roberts*_____
                                                            CLEMENT S. ROBERTS

                                                    Attorney for Defendant
                                                    FITBIT, INC.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CERTIFICATE OF SERVICE

I hereby certify that on February 21, 2018 the within document was filed with the Clerk of the Court using CM/ECF which will send notification of such filing to the attorneys of record in this case.

*/s/ Clement S. Roberts*

CLEMENT S. ROBERTS

DEFENDANT FITBIT, INC.'S NOTICE OF MOTION AND MOTION FOR ATTY. FEES UNDER
35 U.S.C. § 285 / CASE NO. 3:17-CV-05068-VC