William W. Flachsbart (admitted pro hac vice)
wwf@fg-law.com
Robert P. Greenspoon (admitted pro hac vice)
rpg@fg-law.com
Jonathan Hill (admitted pro hac vice)
jh@fg-law.com
FLACHSBART & GREENSPOON, LLC
333 N. Michigan Avenue, Suite 2700
Chicago, Illinois 60603
312-551-9500
Fax: 312-551-9501

Lewis E. Hudnell, III (CASBN 218736)
Hudnell Law Group P.C.
800 W. El Camino Real, Suite 180
Mountain View, California 94040
T: 650.564.7720
F: 347.772.3034
lewis@hudnelllaw.com

Attorneys for Plaintiff
SMART WEARABLE TECHNOLOGIES, INC.

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| SMART WEARABLE TECHNOLOGIES INC., <br><br> Plaintiff, <br><br> v. <br><br> FITBIT, INC. <br><br> Defendant. | Case No. 3:17-cv-05068-VC <br><br> **DECLARATION OF JONATHAN T. SUDER IN SUPPORT OF (1) OPPOSITION TO RENEWED MOTION FOR RULE 11 SANCTIONS AND (2) OPPOSITION TO MOTION FOR ATTORNEYS FEES AND COSTS UNDER 35 U.S.C. § 285** <br><br> Date:  May 10, 2018 <br> Time: 10:00 A.M. <br> Ctrm:  4, 17th Floor <br> Judge: Honorable Vince Chhabria |

I, Jonathan T. Suder, declare as follows:

1. I was previously counsel of record for Plaintiff Smart Wearable Technologies Inc. ("SWT" herein) in the above-styled lawsuit. I have personal knowledge of the matters set forth in this declaration and, if called upon as a witness, I could testify competently to the truth of each of the statements herein.

2. I am over the age of 18, and am of good health and sound mind to make this declaration.

3. I submit this Declaration in support of Plaintiff's Opposition To Renewed Motion For Rule 11 Sanctions and (2) Plaintiffs' Opposition To Motion For Attorneys Fees And Costs Under 35 U.S.C. § 285.

4. I am a founding shareholder of Friedman, Suder & Cooke; the original firm being formed in January of 1993. The firm specializes in commercial and intellectual property litigation, and has been doing so since its inception. Our firm website is www.fsclaw.com, where one can read about our firm, its culture and the various attorneys at the firm.

5. I attended The National Law Center at George Washington University where I received my law degree with honors in 1984. I was a Notes Editor on the Journal of International Law & Economics, and had a Note published that year.

6. Following law school, I accepted a clerkship with The Honorable Eldon B. Mahon, United States District Judge in Fort Worth, Texas, where I served as Judge Mahon's briefing attorney for two years, from 1984-1986.

7. Following my clerkship, I joined the law firm of Kelly, Hart & Hallman in Fort Worth, Texas as an associate practicing primarily commercial litigation. I became a partner at Kelly, Hart & Hallman in January of 1992 and remained there until I left to start my own firm in January 1993.

8. Throughout my practice, I have engaged in commercial intellectual property litigation both in Texas and throughout the United States. I have been admitted pro hac vice in many cases around the country and have never had my pro hac vice application denied. Neither I nor anyone with my firm has ever been the subject of any attorney disciplinary proceeding. One

was filed against me by opposing counsel many years ago, but that was summarily dismissed.

9. I have checked with all the attorneys at FSC and with the exception of two instances where a Rule 11 motion was filed based on an unsuccessful claim construction position and subsequently denied, no one at FSC has been the subject of a Rule 11 motion. We take our Rule 11 obligations very seriously. We have always handled our Rule 11 obligations with the utmost integrity and have never engaged in the type of conduct Defendant is accusing us of in this matter.

10. I am a member of the American Board of Trial Attorneys ("ABOTA"). I am also a Life Fellow in the Texas Bar Foundation and a Fellow in the American Bar Association. I was an adjunct professor at Texas Wesleyan School of Law (which is now Texas A&M Law School) teaching a course entitled "The Art of Advocacy."

11. I served for several years on the State Bar of Texas grievance committee and during my time, I served as Committee Chair.

12. I have written and spoken on numerous legal matters, including for the State Bar of Texas, local Bar events, as well as at national seminars. My talks primarily related to issues involving patent litigation and the ethics of litigation funding.

13. I remain active in the local community both professionally and personally. I serve or have served on numerous boards and executive committees of several non-profit organizations including but not limited to the Fort Worth Symphony Orchestra, The Van Cliburn International Piano Competition, the Multicultural Alliance, and Youth Orchestra of Greater Fort Worth.

14. I have been involved in patent infringement litigation, primarily on the plaintiff's side of the docket. I have represented non-practicing entities, individual inventors, practicing entities, and other owners of intellectual property. We have filed literally hundreds of lawsuits over the years and have never filed a lawsuit without undertaking a good faith analysis into the basis for filing the lawsuit as required by Rule 11.

15. One of my favorite quotes to opposing counsel early in the litigation is that if they have a very strong non-infringement position, or a very strong invalidity defense based on prior art, we want to know immediately. The point I make is that we want to see this information

1  because if the defendant is right, we all have better things to be doing. We have made our

2  reputation being reasonable lawyers and do no waste anyone's time. That is not to say that

3  reasonable minds cannot differ, and a lot of times parties can agree to disagree and litigate.

4      16.    As a result of our practice and the reputation we enjoy, we receive referrals from

5  opposing counsel on a regular basis.  I say this because this is a reflection of the quality of work

6  we do and our desire to get to the merits of a matter and not waste anyone's time or money. This

7  is consistent with the requirements of Rule 11.

8      17.    I have significant trial experience in the Northern District of California. In the

9  mid-90's, I tried a commercial case to success before The Honorable Edward Infante.

10  Immediately following the verdict, I retained the services of Keker and Van Nest to assist me in

11  the post-verdict matters. I retained them because I know both Mr. Keker and Mr. Van Nest

12  personally from a case they had in Fort Worth when I was with Judge Mahon.

13      18.    I have had numerous cases before other federal judges in San Jose and in San

14  Francisco. I also have extensive experience in both the Central and Southern Districts of

15  California and in state court in Santa Clara.

16      19.    As it relates to the Smart Wearable Technologies matter, the lawyers in my firm

17  have consistently applied the practice of Friedman, Suder & Cooke in analyzing and prosecuting

18  the case.

19      20.    I have had the opportunity to sit down with both Corby Vowell and Rich Wojcio

20  to understand exactly what they did and what they needed to do with respect to our Rule 11

21  obligations.  This is all detailed in the declarations of Corby Vowell, one of my shareholders.

22      21.    I give this detailed explanation in part because counsel for Fitbit asserts that Rule

23  11 sanctions are necessary to deter future conduct by my firm. As outlined above, we take our

24  Rule 11 obligations very seriously and handle them in a professional manner.  Nothing is to be

25  gained by ordering sanctions to "send a message" to myself or FSC because of what may or may

26  not have happened in this case.

27      22.    I had a conversation with Clement Roberts in a meet and confer before he filed

28  the renewed Rule 11 motion for sanctions. When I asked him why he was filing the motion since

1  he still had his motion for attorneys' fees against my client under Section 285, Mr. Roberts was
2  very matter of fact in telling me that because Plaintiff is a special purpose subsidiary and may
3  not be able to satisfy an award of attorneys' fees, he is looking to FSC as a "deep pocket" to
4  ensure payment. Mr. Roberts made it clear that he was not filing the motion because he felt that a
5  Rule 11 motion needed to be filed against FSC, but simply to be a guarantor of any possible fee
6  award.  Mr. Roberts was also very clear in stating that if the parent company of Plaintiff would
7  guarantee the obligation, or deposit funds into Plaintiff or into the registry of the Court, then he
8  would not file a Rule 11 motion or seek fees from FSC. I personally find such a statement
9  distasteful but more importantly, it immediately put FSC into a conflict situation relative to our
10 client.  At that time, I had no choice but to report this to my client, and withdraw from the case.
11 Plaintiff has retained the services of Robert Greenspoon of Flachsbart & Greenspoon and FSC
12 has retained the services of Kerr and Wagstaffe LLP. Mr. Roberts sent an email confirming that
13 offer, which he has already provided to the Court as Exhibit S [ECF 132-22] to his declaration
14 [ECF No. 132-3]. I would point out that Mr. Roberts states that he intends to move for fees under
15 §§285 and 1927. Fitbit did not file a motion for fees under §1927.

   I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

   Executed this 27th day of March, 2018.

   _____
   Jonathan T. Suder

4
DECLARATION OF JONATHAN T. SUDER